1811.

Walters
vs
Walters

---

## WALTERS *et al.* vs. WALTERS.

JUNE (E. S.)

APPEAL from *Queen-Anne's* County Court. This was an action of ejectment, brought by the plaintiff below, (now appellant,) to recover a tract of land called *Dundee.* The defendant (now appellee,) took defence on warrant, and plots were made. At the trial the plaintiff read in evidence a patent for the tract of land called *Dundee*, granted to *Robert Walters* on the 18th of March 1746. He also read in evidence a copy, under seal, of the will of *Robert Walters*, the patentee of the said land, dated the 14th of January, 1763. The parts of the will which are material are these: "*and as for my worldly goods which it hath pleased God to bless me with in this life, I give and dispose of in the following manner and form: Item.* I give and bequeath to my son *John Walters*, all *that part of a tract of land called Dundee, whereon I now dwell, according to the division which I have already marked.* I likewise give and bequeath unto my aforesaid son *John Walters*, one negro boy named *Limus*, and one negro girl named *Phillis. Item.* I give and bequeath unto my son *Benjamin Walters, all the remaining part of the aforesaid tract of land called Dundee that lyeth on the north side of the main road that leads from the narrows of Kent Island to church.* I likewise give and bequeath unto my aforesaid son *Benjamin Walters*, one negro woman named *Rumsey*, one mulatto girl named *Grace*, one negro girl named *Sue*, all the cattle, all the household furniture, *and half the hogs on the plantation where he now lives*, all which he has in possession *Item.* I give and bequeath unto my grandson *Robert Walters*, all that part of a tract of land called *Dundee* that lyeth on the

R W, by his will dated in 1763, after stating, "*and as for my worldly goods which it hath pleased God to bless me with in this life, I give and dispose of in the following manner and form,*" devised, *inter alia*, as follows: "*Item.* I give and bequeath unto my son J W, all that part of a tract of land called D, whereon I now dwell, according to the division which I have already made." There were some la devises of other parts and residue of the tract of land called D, to his son B W, and to his grandson R W; also a devise of another tract of land to his grandson R W, "*my aforesaid grandson R W not to inherit his lands aforesaid until the death of his father A W; and my will is, that my son A W inherit the lands aforesaid, and the benefits of them during his natural life,*" also a devise of another tract to his son J J W, He also bequeathed sundry slaves to his grand daughters, "to be equally divided at the death of their father J J W, the said J J W to have the use of the aforesaid negroes and increase, during his natural life." He also bequeathed to another grandson, daughter of A W, a daughter of A W,

"*and if she dies without heirs lawfully begotten, then I give the aforesaid negro to my grandson A W.*" He also bequeathed certain slaves to his wife *during her natural life,* and after her death, then to, &c and then concludes "*after all my just debts, legacies, wife's thirds, and funeral charges are paid, the remainder of my estate I give and bequeath unto my son J W*"—Held, that J W, the son of the testator, took only an estate for life; and that the residuary devise could not be construed to pass any part of the real estate; therefore, that the reversion in fee in the land called D, not being disposed of by will, descended to the heir at law.

south side of the main road that leads from the narrows of *Kent* Island to the church on *Kent* Island   I likewise give and bequeath unto my grandson *Robert Walters* aforesaid, one tract of land called *Walters' Addition to Kirby's Prevention*, laying on *Kent* Island in *Queen Anne's* county; *my aforesaid grandson Robert Walters not to inherit his lands aforesaid until the death of his father Alexander Walters; and my will is, that my son Alexander inherit the lands aforesaid, until\* the benefits of them during his natural life.*   *Item.* I give and bequeath unto my son *James Walters*, one tract of land called *Jamaica*, and fifty acres of land, part of a tract of land called *Hope*, both adjoining, laying on a branch of *Hamilton's* creek in *Chester* Forest, *Queen-Anne's* county, both which tracts of land, and part of a tract, I give unto my aforesaid son *James Walters.*   *Item.* I give and bequeath unto my three granddaughters, daughters to my son *James Walters*, namely *Ruth*, *Mary* and *Ann Walters*, one negro woman named *Dinah*, and all her increase, *to be equally divided among them at the death of their father James Walters, the said James Walters to have the use of the aforesaid negro, and increase, during his natural life.*   *Item.* I give and bequeath unto my grandson *Jacob Walters*, son to *James Walters*, one negro boy named *Sam.*   *Item.* I give and bequeath unto my granddaughter *Anne Blunt*, one negro boy named *Cæsar.*   *Item.* I give and bequeath unto my granddaughter *Susanna Walters*, *daughter to my son Alexander*, one negro girl named *Moll*; *and if she dies without heirs lawfully begotten*, then I give the aforesaid negro *Moll* to my grandson *Alexander Walters.*   *Item.* I give and bequeath unto my daughter *Susanna Lathram*, one negro woman named *Dinah*, and all her increase, which negro and increase she has in possession.   *Item.* I give unto my daughter *Rachel Kirby*, one negro woman named *Murreas*, and all her increase, *to be equally divided among her children*, which negro and increase she has in possession.   *Item.* I give and bequeath unto my son *Jacob Walters*, one negro man named *Jo*, to be delivered to him at the death of his mother *Elizabeth Walters.*   *Item.* I give unto my aforesaid son *James Walters*, one good feather bed and furniture, and one oak desk.   *Item.* It is my will that my dearly beloved wife, *Elizabeth Walters*, have the use of the four following negroes during her natural life; that

\*Probably *and.*

1811.

Walters
vs
Walters

is to say, *Jo, Phillis, Darkey* and *Daphney,* which said four negroes *I will my wife during her natural life, and after her decease, then I give and bequeath the aforesaid four negroes unto the persons hereafter mentioned;* that is to say, *Phillis* to my son *Benjamin Walters, Joe* to my son *Jacob Walters,* and *Daphney* to my son *Alexander Walters,* and *Darkey* to my granddaughter *Anne Walters,* daughter to *James Walters. Item.* After all my *just debts, legacies, wife's thirds and funeral charges,* is paid and discharged, *the remainder of my estate* I give and bequeath unto my son *John Walters.* Lastly. I constitute, make and ordain, my dearly beloved wife *Elizabeth Walters,* executrix, and my son *John Walters* executor, of this my last will and testament, utterly revoking all other wills heretofore made by me, ratifying and confirming this, and none other, to be my last will and testament, in the presence of us whose names are here subscribed." The will was duly executed and proved. The plaintiff then proved, that *Alexander Walters* was the eldest son and heir at law of *Robert Walters,* the patentee and testator; and proved a regular descent down from *Robert Walters,* the patentee and testator, and from *Alexander,* his eldest son and heir at law, to the lessors of the plaintiff. The defendant then proved that *John Walters,* the son of *Robert,* the patentee and testator, mentioned in the said will, was the father of *John Walters,* the defendant; and that at the death of *Robert,* the patentee and testator, *John,* his son and devisee under the will, entered on the lands mentioned in the declaration, and was possessed thereof until his death, which happened in the year 1796, when the defendant, his son, entered into the said lands, and was and is now possessed thereof. The plaintiff then moved the court to instruct the jury, that by the will of *Robert Walters,* the patentee and testator, the fee simple to the lands mentioned in the declaration, and devised as aforesaid to *John Walters,* did not pass the said *John Walters,* the son of the said *Robert Walters,* the testator, and that the fee simple in the said lands has not been disposed of by the said testator by any part of his will, consequently that the same descended to *Alexander Walters,* the son and heir at law; and the same having been regularly transmitted down to the lessors of the plaintiff, the plaintiff is entitled to recover. But the court being divided in opinion, no direction was

given to the jury. The plaintiff excepted; and the verdict and judgment being against him, he brought the present appeal.

The cause was argued in this court before CHASE, Ch. J. and POLK, BUCHANAN, NICHOLSON, EARLE, and JOHNSON, J.

*Martin* and *Bullitt*, for the Appellant, upon the *first question*, as to what estate passed to *John Walters* in *Dundee*, cited *Hogan vs. Jackson, Cowp.* 306. *Bowes vs. Blackett, Ibid* 238. *Loveacres vs. Bright, Ibid* 355. *Denn vs. Gaskin, Ibid* 657, 661. *Roe vs. Bolton*, 2 *Blk. Rep.* 1045. *Right vs. Sidebotham, Doug.* 759, 761. *Doe vs. Wright*, 8 *T. R.* 64; and *Doe vs. Allen, Ibid* 497.

Upon the *second question*, whether *John Walters* took the reversion under the residuary clause? they cited *Timewell vs. Perkins*, 2 *Atk.* 102. *Roe vs. Avis et al.* 4 *T. R.* 605. *Markant vs. Twisden*, 1 *Eq. Ab.* 211, 212. *Doe vs. Buckner*, 6 *T. R.* 610; and *Canfield vs. Gilbert*, 3 *East*, 516.

*Carmichael* and *Harrison*, for the Appellee, upon the *first question*, cited *Hardacre vs. Nash*, 5 *T. R.* 716. *Gilb. Dev.* 17. *Baddeley vs. Leppingwell*, 3 *Burr.* 1533. *Evans vs. Astley, Ibid* 1682. *Winchester vs. Tilghman*, 1 *Harr. & M'Hen.* 452. 2 *Fearne* 4. *Frogmorton vs. Holyday*, 3 *Burr.* 1618. *Oates vs. Cooke, Ibid* 1686. *Loveacres vs. Blight, Cowp.* 352. *Denn vs. Gaskin, Ibid* 657; and *Right vs. Sidebotham, Doug.* 759.

Upon the *second question*, they cited *Holdfast vs. Marten*, 1. *T. R.* 411, 414. *Bridgewater's* case, 6 *Mod.* 106. *Co. Litt.* 144. *b. Roe vs. Avis, et al.* 4 *T. R.* 605. *Gilb. Dev.* 22. *Doe vs. Buckner*, 6 *T. R.* 610. *Trott vs. Vernon*, 2 *Vern.* 708. *Hardacre vs. Nash*, 5 *T. R.* 716; and the act of 1729, *ch.* 24, *s.* 10.

CHASE, Ch. J. delivered the following opinion, which was concurred in by the other judges. I am of opinion that *John Walters*, under the will of his father *Robert Walters*, took only an estate for life in the lands in question. The devise to *John* is general, without words of limitation or perpetuity, and there are no words in the will connected with the devise to *John*, or relating to the

1811.
Walters
vs
Walters

subject matter of it, denoting an intention in the testator to create a greater estate than for life. The introductory clause, although it manifests an intention in the testator to dispose of the whole of his estate, and not to die intestate as to any part, is not so connected with the devise in question to *John*, as to enlarge the estate for life into an estate of inheritance; and the rule of law is too firmly established to be shaken, that a general devise, without words of limitation or words equipollent or tantamount, will not pass a greater estate than for the life of the devisee. In expounding wills the intention of the testator is the polar star, and must prevail, if consistent with the rules of law, and that intention must be collected from the words of the will, which are applicable to the devise under consideration. The intention of the testator inferrable, or to be conjectured by the court in this case, from a general view of his will and the circumstances of his family, cannot be effectuated, because it stands opposed by the rule of law just mentioned, and because there are no words in the will, connected with the devise under discussion, indicating an intention to enlarge the estate for life.

As to the residuary clause, the words "all the remainder of my estate," are full and comprehensive enough to pass the whole of his estate, real and personal, remaining, to his son, *John Walters*, if the generality of these words are not restricted by the antecedent words in such manner as to confine them to the personal estate. In deciding on the operation and effect of these words, the court must consider the whole of the will, for the purpose of ascertaining the intention of the testator. In the introductory clause the testator manifests an intention of disposing of his whole estate, and he does it most effectually if these words are taken in their most comprehensive sense. He devises both real and personal estate, and has given a great many legacies; but it is contended that these words, being connected with the preceding words, "after all my just debts, legacies, wife's thirds, and funeral charges, are paid and discharged"——[We regret that the remaining part of the opinion of the court has been mislaid. But the result of it was, that the general residuary devise to *John Walters*, when taken in connexion with the other parts of the will, was to be confined to the testator's personal estate.]

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.