## Edward F. Smithers, Admr. *d. b. n., c. t. a.* of William Jackson, *vs.* Ezekiel B. Hooper and Wife.

Wills, Construction of.—The last will and testament of W. J. provided as follows: "*Eighth.*—After the payment of all my debts, and taking out the expenses of administration, and all legacies provided for and set apart, so as to ascertain the net balance of estate," &c., "I give and bequeath to my daughter, M., one entire tenth part of such entire balance so ascertained,"—by the *third* clause, one-fifteenth of such balance had been bequeathed to his grand-daughter, H. "*Ninth.*—I give, devise and bequeath all the rest and residue of estate, real, personal and mixed, to my three sons, A., W. and R., to them and their heirs and assigns forever, to be equally divided between them, share and share alike." "*Tenth.*—It is my will and desire, and I hereby direct and empower my executors hereinafter named, to sell and dispose of all my real estate at public sale, and on such terms as they in their discretion may think most conducive to the interests of all those interested therein." Held:

1st. That there is nothing in the context to justify the limiting the gift to M. in the *eighth* clause to the personalty only.

2nd. That the intention of the testator must be gathered from the whole will; from a consideration of all the provisions contained in it, without regard to the order in which those provisions occur.

3rd. That the intention of the testator, as gathered from the whole will, was that his real estate should be converted into money, and constitute, with his personal estate, a common fund, out of which should be first paid debts, legacies and expenses, and the net balance thereof divided amongst the

parties named in said third, eighth and ninth clauses, as therein provided.

EXECUTOR, WHEN LIABLE FOR INTEREST.—Where letters testamentary were granted December 21st, 1857,—the debts of the estate not amounting to $500,—the real estate sold September 11th, 1858, and the executor did nothing towards settling the estate up to the time of his death, in April 1863, (a period of more than five years,) except the distribution of negroes on the 14th January 1861, having passed no account, although cited so to do by the Orphans' Court no less than eighteen times, it was HELD:

That the executor was guilty of inexcusable laches and delay, and was chargeable with interest on the estate in his hands after the lapse of thirteen months from the date of his letters testamentary.

ADMINISTRATOR *d. b. n.*, LIABILITIES OF.—An administrator *d. b. n.*, who has diligently and faithfully performed his trust, should not suffer loss by reason of the default of the executor, but is chargeable only with the funds that have come into his hands, or which he was entitled to receive from the estate of the deceased executor.

APPEAL from the Orphans' Court for Dorchester county:

This appeal is taken from an order of the Court below, directing distribution to be made of the estate of Dr. William Jackson, deceased, and ordering that in such distribution there be awarded to Margaret H. T. Hooper, one-tenth part of the entire balance of the estate in the hands of the administrator, including the proceeds of the sale of the real estate of the deceased, as sold by his executor, under the directions contained in the will of the deceased, and charging the administrator with interest, according to statement C, filed in the case.

The application for distribution was made by the appellees on the 30th of December 1864. The record shows that Dr. William Jackson died in December 1857, leaving a will, executed on the 24th of June 1857, and admitted to probate on the 14th of December 1854; and it is upon the true construction of this will that the main question in this case depends. The testator left three sons, William, Alexander and Richard; one daughter, Mrs. Margaret H. T. Hooper; and one grand-daughter, the daughter of a deceased son, Benjamin.

By the first clause, he gives $1,500, and certain specified articles of personal property, portraits, paintings, books, &c., to his son, Alexander.

By the second, he releases his sons, William and Richard, from all claims due by them to him, up to the date of his will.

By the third, he gives and bequeaths to his grand-daughter, Henrietta M. Jackson, daughter of his deceased son, Benjamin D. Jackson, a servant, subject to certain restrictions thereafter made in his will; also, certain specified articles of furniture and jewelry, and then follows this bequest, viz : "And further, after all my just debts are paid, the expenses of settling my estate, together with all the legacies heretofore and hereafter provided for by this my will, shall be taken out, so as to show the net balance of estate then left; I give and devise to my aforesaid grand-daughter, one fifteenth part or portion of the then shown and so ascertained net *residuum* of my estate."

By the fourth clause he provides, that in the event of the death of his said grand-daughter unmarried, and before she attains the age of eighteen, "it is my will and desire, and I do hereby give and bequeath all the property which I have heretofore given in the third clause or item of this my will, to my said grand-daughter, to those persons to whom I shall and may hereinafter give the rest and residue of my estate," except certain articles of jewelry which are given to Mrs. White, the grand-mother of his said grand-daughter.

By the fifth and sixth clauses, he gives his gold watch and gold sleeve buttons to two of his grand-sons; and, by the seventh, he makes provision for his servant boy Henry, and then come the following clauses :

"Eighth. After the payment of all my debts, and taking out the expenses of administration, and all the legacies provided for and set apart, so as to ascertain the net balance of estate, after such taking out of legacies, expenses, &c., then I give and bequeath to my daughter Margaret H. T.

Hooper, one entire tenth part of such entire balance so ascertained.

"Ninth. I give, devise and bequeath all the rest and residue of estate, real, personal and mixed, to my three sons, Alexander I., William S., and Richard H. Jackson, to them and their heirs and assigns forever; to be equally divided between them, share and share alike.

"Tenth. It is my will and desire, and I hereby direct and empower my executors hereinafter named, to sell and dispose of all my real estate at public sale, and on such terms as they, in their discretion, may think most conducive to the interest of all those interested therein."

He then appoints his son, William, and Thos. B. Sherman, his executors. Sherman renounced the trust, and letters testamentary were granted to William S. Jackson, on the 21st of December 1857; and it appears from the record that the said executor returned an inventory, sold the personal estate in March and April 1858, and returned an account of sales, and also a list of sperate debts due the estate, and in pursuance of the power and authority given him by the Court, sold all the real estate of the deceased, at public sale, on the 11th of September 1858, on credit of one, two and three years, the sales amounting to $8,094.75; and that he also, on the 14th of January 1861, distributed the negroes belonging to the estate among the heirs under the will. This is all he appears to have done. He never rendered any account to the Orphans' Court, although citations, no less than eighteen in number, commencing in July 1860, and ending March 1863, appear to have been issued from the Orphans' Court, and served upon him, commanding him to appear and show cause why he does not render a final account of his administration of the estate.

The executor died in April 1862, and on the 27th of that month, letters of administration, *d. b. n., c. t. a.*, were duly granted to the appellant Smithers, who was one of the sureties on the bond of the deceased executor, and on

the 25th of July 1864, he passed his first administration account, in which the personal and the proceeds of the real estate, sold by the deceased executor, are accounted for, and the commissions on the proceeds of such sales are allowed and deducted, leaving a balance due the estate of $9,955.72, and on the same day he also makes report of the sales of the real estate made by the deceased executor, which sales were duly ratified by the Orphans' court on the 11th of October 1864.

It also appears that on the 25th of July 1864, the Orphans' Court passed an order allowing the deceased executor four per cent. commissions on the personal estate, and two and a half per cent. commissions on the sales of the real estate, and on the 13th of December 1864, orders were passed, allowing the deceased executor four per cent. commissions on additional personal estate returned, and two and a half per cent. commissions on additional real assets returned, and also allowing the administrator *d. b. n.*, *c. t. a.*, four per cent. on the personal estate, and two and a half per cent. commissions on the proceeds of the sale of the real estate of the deceased testator; making in all, eight per cent. on the personal estate, and five per cent. on the proceeds of the sale of the real estate.

Two statements, A & C, were filed by the petitioners, and one, B, by the administrator, showing the amounts for distribution. There is no difference as to the items of account, but they differ as to the charge of interest against the administrator. Statement B, on the part of the respondent, makes no charge of interest, and makes the entire balance of estate for distribution, $9,178.49. Statement A charges interest on the whole balance of personal estate, from 13th November, after the date of letters, to the executor, viz: from February 1st, 1859, to December 13th, 1864, and then deducts the commissions; and on the proceeds of real estate from the date of sale, 11th September 1858, to the 13th of December 1864, and then deducts the commissions. Statement C first deducts the commissions on both personal

and the proceeds of real estate, and charges interest on the balance of personal estate° from the 1st of February 1859, and on the proceeds of real estate from the 1st of October 1861. By statement A, there is $12,923.60 for distribution, and by statement C, there is $11,406.82. The Court adopted statement C as the basis of accountability, and directed one-tenth of the entire balance, including the proceeds of the sale of the real estate, to be paid to Mrs. Hooper. From this order the administrator appealed.

The cause was argued before BOWIE, C. J., and BARTOL, COCHRAN and WEISEL, J.

*Jas. Wallace,* for the appellant, argued:.

That the Orphans' Court erred—1st. In ordering the administrator *d. b. n.* to pay and account for interest from the end of thirteen months from the date of letters granted to Wm. S. Jackson to December 13th, 1864, the date of said distribution. 2nd. In awarding to Margaret H. T. Hooper one-tenth part of the entire balance of said estate, composed of proceeds of both real and personal, instead of awarding her only a tenth of the personal estate remaining on hand.

1st. In support of the first proposition, the appellant urges that there has been no neglect or malfeasance on his part, he has diligently and faithfully performed his trust, and, as administrator *d. b. n.*, is not responsible for any neglect of the deceased executor. There has been no objection made to the administration accounts of the administrator of William S. Jackson, the deceased executor, for not accounting for interest; those accounts showing the balance of estate of Doct. William Jackson, in the hands of the deceased executor, at the time of his death, including interest secured, have been approved by said Court, and are unobjected to by the appellee. The appellant respectfully submits, that if any claim for interest, on the balance of said estate, can be properly made by the parties interested, it should be made upon the estate of the late executor, and not upon

this appellee, as administrator *d. b. n.* of Doct. Wm. Jackson. He is, properly, only responsible for what he has received from the estate of William S. Jackson, late executor, unless he also has been guilty of neglect or misconduct. The statement marked exhibit "B," shows the amount received by the appellant from the estate of said executor, and shows the net balance for distribution to be $9,178.49. By the statement marked exhibit "C," upon which the Court made the distribution, the balance shown is $11,406.82, making a difference of $2,227.33 of interest. Of this amount the deceased executor could only be responsible for that which had accumulated up to the day of his death, and the residue must be charged, by this statement, to your appellant as administrator *d. b. n.* of William Jackson, when he had not the funds in hand, and could not use them, and has never secured that amount of interest from the estate of the deceased executor, and is not entitled to receive it; therefore, if the order of said Court should stand unreversed, it must be chargeable and paid by himself. This is contrary to the policy of the law. Where executors, administrators and trustees act *bona fide* and with due diligence, they have always received the favor and protection of the Courts; their acts have been regarded with the most indulgent consideration. *Diffenderfer vs. Winder*, 3 *G. & J.*, 341. Whenever an administrator fairly intends to do his duty, the rule should be, not to hold him liable upon slight grounds. *Gwynn vs. Dorsey*, 4 *G. & J.*, 460. *Chase vs. Lockerman*, 11 *G. & J.*, 207. All the proceedings in the cause shows that Smithers not only intended, but actually has acted fairly and faithfully. No charge of malfeasance has been made against him, nor does any neglect appear. Without being guilty of one or the other offence, the Courts never hold an administrator responsible for interest upon any balance that may be in his hands. *Williams on Exrs.*, 1132, adopted and approved in 11 *G. & J.*, 208. The appellant therefore insists, that if any person is responsible for interest on the balance of said estate, it is not himself,

and that he should not be held responsible for any part of it. If the deceased executor has been negligent, and loss has occurred, it would properly be chargeable to his estate, and not to this appellant, as administrator d. b. n. of Doct. Wm. Jackson, and the Orphans' Court aforesaid erred in directing him to pay and account for the interest aforesaid, but especially that which had accrued after the decease of the said executor, and while the estate was in this appellant's hands.

2nd. The appellant urges that the Orphans' Court erred in directing a distribution to be made upon the basis of allowing Margaret H. T. Hooper one-tenth of the balance in the hands of the administrator d. b. n., composed as it was of the proceeds of real and personal estate. It seems clear, when the whole will of Doct. Wm. Jackson is taken together, that his intention was to give to Mrs. Hooper one-tenth part of the personalty, simply.

The act of the executors, under the provisions of the 10th section of the will, and the Act of 1831, may convert the real estate, which he had previously devised to his sons, into assets, but those assets are to be regarded as equitable assets, subject to the provision of the will. The executors were simply directed, by the 10th section, to sell on such terms as they, in their discretion, might think most conducive to the interests of those interested therein. And who were those interested therein? The testator might have been more specific; he might have used a few more words here, which would have ended all cavil, but his meaning can be gathered from the ninth clause; there he specially makes his three sons the parties interested. Then we infer that the executors were to sell it for the benefit of his sons and their heirs forever.

The term "estate," by itself, or in connection with other words, may refer to the body or quantity of property; it is sometimes used to describe the quantity, and at other, the quality of interest. When used in residuary clauses of wills, in connection with payment of legacies, debts, ex-

penses, &c., it has been explained to refer to personal estate, and though it is expansive enough to embrace real estate, yet, in such context, it has been ruled to refer to personal estate. See the cases of *Walters vs. Walters*, 3 *H. & G.*, 204, 205; *McChesney vs. Bruce*, 1 *Md. Rep.*, 347.

We maintain, therefore, that by the 8th clause of the said will, the said Margaret Hooper was entitled only to one-tenth part of the net balance of the personal estate, and the Orphans' Court erred in awarding her the tenth part of the entire estate.

*O. Miller*, for the appellees, insisted, that the order of the Orphans' Court was correct, and, in support of that position, argued:

1st. That the will must be construed by the intention of the testator, and that intent is to be gathered from the whole will,—from a consideration of all the provisions contained in it. Looking to all the provisions of this will it is submitted, that the obvious intention of the testator was, that all his real estate should be converted into money, and that the proceeds of sale of the real estate should constitute a common fund with his personal assets for the payment of his debts, and all the pecuniary legacies contained in the will; and that then, after the debts, legacies and expenses of administration were paid out of this common fund, one fifteenth part of the net balance thereof so ascertained, was to go to his grand-daughter, one-tenth part to his daughder, Mrs. Hooper, and the rest and residue to be equally divided between his three sons.

Such would be the construction, independent of the provisions of the Act of 1831, ch. 315, secs. 10 and 11, in view of which, and under which, this will was made. But it is further submitted, that under this Act, real estate directed to be sold by a testator, is converted into legal assets to be administered in the Orphans' Court precisely in the same manner as personal estate, liable in the same manner for the payment of debts and legacies, and in no respect distin-

guishable from other personal assets of the deceased. When, therefore, this testator directed all his real estate to be sold by his executors at public sale, on such terms as they might think most conducive to the interest of all those interested therein, the proceeds of sale became personal assets, applicable to the payment of debts and legacies; and when he gave to his daughter one entire tenth part of the entire net balance of his estate, after deducting all debts and all legacies, and expenses of administration, it must be evident that the balance of estate, out of which the daughter was to receive a tenth, included the proceeds of the sale of the real estate thus directed to be sold, and thus converted into personal assets.

There is, it is submitted, nothing in the ninth clause of the will in controlling contravention of this construction. On the contrary, when this clause is examined in connection with the other parts of the will, it rather confirms the construction contended for. "All the rest and residue of the estate, real, personal and mixed," here given to the three sons, cannot mean all the residue of personal estate, and the whole of the real estate. The very words import that a portion of the real, as well as of the personal estate, had been previously disposed of. But in fact, no real estate, as such, could go to the sons under this or any other clause of the will. It was all directed to be sold by the executors, and what the testator had to dispose of, was the proceeds of sale, and what he meant by this clause is simply this, that all the residue of his personal estate, and all the residue of the proceeds of sale of his real estate, after satisfaction of debts, legacies, &c., and after the fifteenth to the grand-daughter, and the tenth to the daughter, had been set apart and given to them respectively, should go to his sons.

In support of these views, reference is made to : 1 *Jarman on Wills*, 318, 410, 574, 575, *et seq.; McChesney vs. Bruce,* 1 *Md. Rep.*, 347; *Walters vs. Walters,* 3 *H. & J.,* 201; *Beall vs. Holmes,* 6 *H. & J.*, 228; *Tofield vs. Tofield,*

11 *East.*, 276; *Ballard vs. Goff*, 20 *Pick.*, 252; *Smith vs. Smith*, 103 *Eng. C. L. Rep.*, 121; Act of 1831, ch. 315, secs. 10, 11; 3 *Wheat.*, 563; *Ringgold vs. Ringgold*, 1 *H. & G.*, 83.

2nd. That the charge of interest against the executor was correct. The date of letters testamentary to the executor, was December 21st, 1857. The debts of the estate did not amount to $500. The real estate was sold on the 11th of September 1858. He did nothing towards settling the estate, except the distribution of the negroes on the 14th of January 1861, until his death in April 1863, a period of more than five years. He passed no account, although no less than eighteen citations were issued from the Orphans' Court and served upon him, requiring him to do so. During all this time he had control and possession of the entire estate, including the proceeds of the sale of the realty. No attempt is made to excuse this delay and neglect, and no reason shown why distribution of the estate had not been made long prior to the commencement of these proceedings. Under such circumstances, an executor or administrator is chargeable with interest on the balance of estate in his hands ready for distribution, and the charge made in the order appealed from, on the basis of statement C, is correct and proper, and sustained by abundant authority. *Crain vs. Barnes*, 1 *Md. Ch. Dec.*, 151. *Hitch vs. Davis*, 3 *Md. Ch. Dec.*, 266. *White vs. Donnell & Howard*, 3 *Md. Ch. Dec.*, 526. *Worthington vs. Owings*, 9 *Gill*, 196. *Lyles vs. Hatton*, 6 *G. & J.*, 122. *Gwynn vs. Dorsey*, 4 *G. & J.*, 453. *Chase vs. Lockerman*, 11 *G. & J.*, 185. *Mickle vs. Neilson*, 10 *Md. Rep.*, 352. *Iglehart vs. Kirwan*, 10 *Md. Rep.*, 559. *Thomas vs. Fred. Co. School*, 9 *G. & J.*, 115. *Dorsey's Test. Law*, 90, 91.

BARTOL, J., delivered the opinion of this Court:

This appeal is taken from an order of the Orphans' Court of Dorchester county, directing distribution to be made of the estate of Doct. William Jackson, deceased, and ordering

that, in such distribution, there be awarded to Margaret H. T. Hooper one-tenth part of the entire balance of the estate in the hands of the administrator, including the proceeds of the sale of the real estate of the deceased, as sold by his executor, under the directions contained in his will, and charging the administrator with interest, according to statement "C," filed in the case.

The appellant contends that the Orphans' Court erred in awarding M. H. T. Hooper one-tenth part of the entire balance of the estate, composed of proceeds of both *real and personal* estate, instead of awarding her only one-tenth of the personal estate on hand; and in support of this view has cited *Walters vs. Walters,* 3 *H. & J.,* 201; *McChesney vs. Bruce,* 1 *Md. Rep.,* 344.

In those cases gifts of the residue of the testator's estate were construed to pass only personal property, notwithstanding the generality of the words of the gift; because, from the context, it appeared to be the intention of the testator not to include real estate in the devise. It was held that "the generality of the words was restricted by antecedent bequests, in such a manner as to confine them to the personal estate."

In the construction of the wills in those cases, the Court was guided by the rule, that the intention of the testator, as expressed upon the face of the instrument, must be carried out. This, after all, is the cardinal rule of construction; hence the interpretation of such instruments depends mainly upon the particular language employed, and but little aid can be derived from the examination of adjudged cases, in which other wills, different in their terms and provisions, have been judicially construed.

After a careful examination of the will before us, we are of opinion that the Orphans' Court have properly construed it. There is nothing in the context to justify us in limiting the gift to Mrs. Hooper, in the eighth clause, to the personalty only.

By the tenth clause, the testator directs and empowers his executors to sell all his real estate at public sale, on such

terms as they, in their discretion, may think most conducive to the interest of all those interested therein. If this clause had occurred in the first part of the will, there would be little room for dispute as to the meaning of the other provisions. And there is no reason for giving to it a different effect, because it is found in the latter part of the instrument. The intention of the testator must be gathered from the *whole will;* from a consideration of all the provisions contained in it, without regard to the order in which those provisions occur. The real estate is not devised as such, but is directed to be sold, and the proceeds thereof is disposed of by the will as money. The effect of these provisions was to convert the real estate into personal assets. *Hurt vs. Fisher*, 1 *H. & G.*, 88. *Thomas vs. Wood*, 1 *Md. Ch. Dec.*, 296. *Carr vs. Ireland*, 4 *Ib.*, 251.

It seems to us, looking at the whole will, the intention of the testator was, that his real estate should be converted into money, and constitute, with his personal estate, a common fund, for the payment of debts and legacies, and after these and the expenses of administration were paid out of this common fund, the net balance thereof is given, the one-fifteenth part thereof to his grand-daughter, the one-tenth to his daughter, Mrs. Hooper, and the residue to be equally divided between his three sons.

In the opinion of this Court, the executor was properly charged with interest on the estate in his hand after the lapse of thirteen months from the date of his letters testamentary. The facts of this case show inexcusable laches and delay on the part of the executor, in retaining the fund in his hand without apparent reason, and failing to pass his accounts and make distribution. In such case he is chargeable with interest. *Chase vs. Lockerman*, 11 *G. & J.*, 186. *Gwynn vs. Dorsey*, 4 *G. & J.*, 453.

No laches or delay, however, can be charged in this case against the administrator *de bonis non,* who has diligently and faithfully performed his trust, he should not, therefore, suffer any loss by reason of the default of the executor.

He is chargeable only with the funds that have come into his hands, or which he was entitled *to receive* from the estate of the deceased executor. It appears, from the record, that he is also administrator of the deceased executor, and, as such, has exhibited and passed, in the Orphans' Court, accounts of administration on behalf of the executor, under the 11th section of the 93rd Article of the Code. In those accounts, interest on the fund ought to have been charged, which would have augmented the balance in the hands of the executor for distribution among the legatees, and which properly comes to his hands as administrator *de bonis non*, and to be accounted for by him.

As administrator of the deceased executor, he will be entitled to receive the share of the fund bequeathed to his intestate, and, in the settlement of that estate, may be allowed and reimbursed the amount he may pay on account of interest charged against the executor. In our opinion, the costs of this appeal ought to be paid out of the estate of the testator, and we shall pass an order accordingly.

*Order affirmed and cause remanded.*

(Decided July 7th, 1865.)