# MILLER *v.* PAYNE.

WILLS; CONVERSION AND RECONVERSION; ADEMPTION OF LEGACIES; EVI-
DENCE, DECLARATIONS AS; DEEDS; ASSIGNMENTS OF INTERESTS IN DE-
CEDENTS' ESTATES.

1. A provision in a will that the real estate devised shall be sold one year
   after the death of the testatrix, and the proceeds divided equally be-
   tween her children, operates as an equitable conversion of the real
   estate (following *Iglehart* v. *Iglehart*, 26 App. D. C. 209); and a
   reconversion cannot be assumed where the real estate is sold within
   the year, the heirs instead of the executor executing the deeds, part
   of the proceeds retained by the executor, and all of the proceeds treated
   exactly as they would have been had the executor himself conveyed
   the property.

2. Where a mother, after making a will providing that her real estate
   should be sold one year after her death and the proceeds divided
   equally between her five sons and daughters, borrowed money on the
   real estate, and turned it over to one of her sons to establish him
   in business, taking no security or evidence of indebtedness from him,
   but declaring that the money given him would be deducted from his
   share of her estate at her death,—such gifts or advancements will
   operate as an ademption of his legacy.

3. Declarations by a testatrix, made after the execution of her will, that
   certain gifts or advancements made to one of her sons would be
   deducted from his share of her estate at her death, are admissible
   upon the question of whether they operate as an ademption of a
   legacy to him under the will, as a part of the *res gestæ*, and as show-
   ing the intent of the testatrix.

4. Where a will converts the real estate devised into personalty, and
   provides for the distribution of its proceeds among the sons and
   daughters of the testatrix, a deed by one of the sons, made after his
   mother's death, to a stranger, of his interest in the estate, will operate
   merely as an assignment of his interest as a legatee; and where
   advancements by the testatrix to such son during her lifetime exceeded
   in amount his distributive share as legatee, and operate to adeem his
   legacy, his assignee takes nothing by the assignment.

No. 1682.  Submitted November 9, 1906.  Decided December 4, 1906.

HEARING on an appeal from an order of the Supreme Court ·of the District of Columbia holding a Probate Court, overruling ·exceptions to and confirming a report of the auditor.  *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from an order of the supreme court of the District of Columbia holding a probate court, overruling exceptions to and confirming the auditor's report.

Priscilla R. Payne, widow, died July 25, 1904.  She was ·survived by five children, and left the following will:

Washington, D. C., Sept. 6, 1894.
Know all men by these presents that I Priscilla R. Payne of Washington District of Columbia being of sound and disposing mind and memory do make publish and declare this instrument to be my last will and testament I give, devise, and be- ·quest all my real property described as follows lot "39, square 55," situated on Dumbarton Avenue West Washington "and lot" 79 square 72, situated on Dumbarton Avenue West Washington;" this property to be sold one year after my death and the proceeds to be divided equally between my children "John E. Payne," "Lorraine E. Holder" " Harry S. Payne," "Walter W. Payne," "Lily May Payne."

I hereby appoint my son, John E. Payne, Executor of this will without bond.

In witness whereof I hereunto set my hand and seal this Sixth ·day of September, A. D. 1894.

Priscilla R. Payne.

In October, 1898, the son Walter having previously ex- ·pressed an intention to go away, his mother, to enable him to purchase a half interest in a hotel at Upper Marlboro, Maryland, and thereby remain comparatively near her, borrowed from the American Security & Trust Co. $1,100, giving as

security a deed of trust on part of her District real estate. The proceeds of this loan, amounting to $1,031.30, she turned over to Walter, taking from him no evidence whatever of indebtedness. With this money he in fact purchased a half interest in said hotel. In June, 1902, Mrs. Payne borrowed from the Washington Six Per Cent Permanent Building Association the sum of $1,800, giving the same security as before. Out of this second loan she liquidated her indebtedness to the American Security & Trust Company, and turned over to Walter the balance, $539.75, for use in his business. She took no security or evidence of indebtedness from him for this amount. She subsequently borrowed further sums from the First Co-operative Building Association of Georgetown, and turned over to Walter, without evidence of indebtedness, the proceeds of these loans, aggregating $645.

After her death her will was duly admitted to probate and record, and letters testamentary issued to John E. Payne on September 6, 1904. On March 21, 1905, the executor filed "an inventory of money and debts due to deceased," wherein he stated that W. W. Payne was indebted to the estate in the sum of $2,588.75.

On November 26, 1904, four months after the death of his mother, Walter W. Payne executed to J. Barton Miller, appellant, in consideration of $10, a deed of his right, title, and interest in and to one undivided fifth of all the real, personal, and mixed estate of which the said Priscilla R. Payne died seised and possessed.

In accordance with the direction of the will, the real estate was sold, the heirs, however, executing the deeds, Miller signing for Walter. The proceeds of the first sale were retained by the executor, and, some contention having arisen as to the rights of Miller, the proceeds of the second sale were placed in the hands of Mr. Jesse H. Wilson and Mr. Smith Thompson, Jr., as trustees, to be held until Miller's rights should be determined. On November 13, 1905, the court referred the matter to the auditor for the purpose of stating the account of the executor, and of making distribution of the estate to the parties entitled

thereto, and in so doing to hear evidence on behalf of the interested parties. Testimony was taken, and the auditor filed his report on March 31, 1906. In this report, after setting forth the facts surrounding the procurement by Mrs. Payne of the above sums of money for Walter, the auditor said:

"These several deliveries of money by the testatrix to the said Walter W. Payne were made several years after the making of her will, and the proof taken in this reference clearly establishes her intention that these deliveries were intended as advancements on account of his share in the estate, and to be adjusted in such manner as to equalize the distributive portions of all the devisees. It is further established that Walter was informed of that intention and condition by the testatrix, and after her death the making of the said advancements was admitted by him. * * * Upon the conditions appearing in the proof and in the records of the case, I feel bound to find that J. Barton Miller, in accepting a conveyance of the interest of Walter W. Payne, took it charged with advancements made by the testatrix, and I have stated the distribution in this account accordingly."

*Mr. Jesse H. Wilson, Mr. Jesse H. Wilson, Jr.,* and *Mr. John Ridout,* for the appellant:

1. The will does not operate a conversion. *Clark* v. *Hamilton,* 3 Mackey, 428. But even if the will did effect an equitable conversion, it is clearly within the power of the beneficiaries to reconvert, and this they did; for, instead of allowing the executor to sell, they themselves sold. *Craig* v. *Leslie,* 3 Wheat. 563. Reconversion is that imaginary process by which a prior constructive conversion is annulled and the converted property restored, in contemplation of equity, to its original state. 7 A. & E., p. 480.

2. There was no advancement, either of realty or personalty, because the doctrine of advancement can only be invoked in cases of intestacy. This is settled by cases to be cited, must be so on principle, was so prior to the Code, and is so affirmatively

provided in secs. 379 and 959.  1 A. & E. 761, *Stewart* v. *Pattison,* 8 Gill, 46.

3. There was no ademption.  Sec. 1630 of the Code is unfortunately inaccurate in speaking of a satisfaction of a legacy because the term *ex vi termini* imports an obligation on the part of a testator of which he can only relieve himself with the assent of the other party, so that the statutory provision would be void if construed according to its letter.  What is really sought to be accomplished by sec. 1630 is to apply the well-known doctrine of ademption to all legatees, where competent proof shows such was the intention of the testator.  Here a question arises whether, this will having been published before the Code went into operation, its interpretation can be controlled by it.  We insist that it cannot be, but assuming it can be, we have not in this case the essential elements of an ademption.  Ademption by portions occurs when a testator, standing *in loco parentis,* makes a gift to his legatee of a certain and substantial amount, substantially identical in kind with a prior bequest, without direction in the testament.  1 A. & E. 613.  The expression *in loco parentis* ought really to be *in loco patris,* because the doctrine is never applied except where the testator owed a legal duty to provide for the legatee.  A mother is not within the rule.  1 Am. & Eng. p. 615.  *Bennett* v. *Bennett,* L. R. 10 Ch. Div. 474. In this case the competent proof is clear that there was no gift. If it shows anything, it shows loans.  The device is uncertain, being of a residue.  *Davis* v. *Whitaker,* 38 Ark. 449 ; Roper, Legacies, 377.  It is not *ejusdem generis.*  We must test this question of identity by what the testatrix knew.  She did not foresee that technical lawyers would talk about conversion in respect of her will.  She understood that she had devised an interest in the real estate to her son Walter, and so she had, for a devise of the proceeds of land is a devise of the land.  *Clark* v. *Hamilton, supra.*  If she loaned her son any money, she understood thereby that he became her debtor, but there is no proof that she loaned him money.  There is no proof that she adeemed, not only for lack of all the requisites, but because there is no competent proof of any intention to advance.  Her alleged

loose declarations made long after the acts are not competent. *Harley* v. *Harley,* 57 Md. 340. This case is conclusive, and if *Graves* v. *Spedden,* which will be quoted contra were in point, which it is not, *Harley* v. *Harley* overrules it, and is in every respect a better-reasoned case. These declarations are also inadmissible, being rank hearsay. Counsel for the executor, feeling the force of this, practically concede that they must contend and establish that, if Walter was indebted to his mother when she died, that debt was a prior lien upon his interest under her will and paramount to a conveyance by him, and they attempt to base this contention upon the law of set-off. Set-off relates to mutual debts, it is true, but the fact of the existence of a debt from plaintiff to defendant was no defense to an action by the plaintiff prior to the statutes of set-off, and could not be availed of as a defense since such statutes, unless pleaded. *United States* v. *Ford,* 6 Wall. 488; 25 A. & E. 489. It appears in this case that the first intimation of any claim of an indebtedness from Walter was when the executor filed his inventory of debts, which was in March, 1905. By that paper the representatives of these objectors, acting for them, elected to treat these claims as loans, and cannot now be heard to claim otherwise. *P. W. and B. R. R.* v. *Howard,* 13 How. 337; *Davis* v. *Wakelee,* 156 U. S. 680.

4. When one purchases from a devisee, he is only bound to ascertain whether the personalty is sufficient to pay the debts of the testator. He is not bound to inquire whether the devisee is indebted to the estate or has received advancements. *Gibson* v. *McCormick,* 10 Gill & J. 65. This is peculiarly true in this case. The executor waited nearly a year before he disclosed on the record any purpose to assert any claim against Walter. He might have sued him, and ought to have done so, if he thought he could prove his case, which the attempted proof shows he could not have done. He encouraged Miller to permit payment of proceeds of sale into the executor's hands and into certain trustee's hands, and gave no hint of his purpose, and he and the others for whom he acts, having thus lulled Miller into security and led him to change irrevocably his status and part with the potent

weapon of record, title by deed, now spring these inconsistent claims of ademption and set-off, and attempt to deprive him of his rights as a bona fide purchaser for value, without notice. This course of conduct does not meet with favor in an equity court. See *Dangerfield* v. *Williams,* 26 App. D. C. 508.

*Mr. Charles T. Hendler* and *Mr. Smith Thompson, Jr.,* for the appellees.

*Mr. Justice* ROBB delivered the opinion of the Court:

The first contention of the appellant is that there was no conversion of the real estate. This contention is obviously untenable, for the will expressly provided that the property should be sold one year after the death of the testatrix, and the *proceeds* divided between her children. That such a provision operates as an equitable conversion is too well established to admit of argument. *Iglehart* v. *Iglehart,* 26 App. D. C. 209; *Smithers* v. *Hooper,* 23 Md. 273; *Reiff* v. *Strite,* 54 Md. 298; *Forysth* v. *Forsyth,* 46 N. J. Eq. 400, 19 Atl. 119; *Re Fuller,* 86 Hun, 47, 33 N. Y. Supp. 194. And, in our view of the case, this conversion is in no way affected by the fact that the heirs instead of the executor executed the deeds, since the *proceeds* of the sales were treated exactly as they would have been had the executor himself conveyed the property. Such a conveyance, in the circumstances, does not indicate an intention on the part of the heirs to take the property in its original state, but merely an intention on their part to hasten the conversion by assisting the executor in carrying out the provisions of the will. Miller urged these sales because he was desirous of having the real estate speedily converted into money. His real-estate firm negotiated each sale, and for so doing received a commission which was deducted from the proceeds of each. Moreover, he was asked during the hearing before the auditor whether he had made any claim to any part of the proceeds of the first sale, and replied that he "accepted a statement from Mr. Thompson (counsel for the executor) in the beginning that it would not be proper *to dis-*

*tribute this money until the administration year was up.*" All this negatives the idea of a reconversion. The will directed the sale of the realty in one year after the death of Mrs. Payne, and, while this operated in law as an immediate conversion, it did not authorize the executor to execute a deed until a year had elapsed. The sales, however, were actually made within one year, and this is probably one reason why the heirs were required to sign the deed. Certainly a reconversion cannot be assumed from the bare fact that the heirs joined in the conveyance, when the executor was permitted to retain the proceeds of such sale for distribution as though he himself had executed the conveyance.

We see no merit in the second contention of appellant, that the above gifts to Walter did not operate as an ademption of his legacy. *Wallace* v. *Du Bois,* 65 Md. 153, 4 Atl. 402; 2 Woerner, Am. Law of Administration, 2d ed. sec. 448; Wms. Exrs. 1334; *Van Houten* v. *Post,* 33 N. J. Eq. 344; *Richards* v. *Humphries,* 15 Pick. 133; *Benjamin* v. *Dimmick,* 4 Redf. 7; *Keiper's Estate,* 5 Pa. Co. Ct. 568.

Sec. 1630 of the Code [31 Stat. at L. 1434, chap. 854] has been referred to, but we find it unnecessary to determine whether its provisions govern the interpretation of this will or not. Said section is as follows: "A provision for or advancement to any person shall be deemed a satisfaction, in whole or in part, of a devise or bequest to such person contained in a previous will, if it would be so deemed in case the devisee or legatee were the child of the testator; and whether he be a child or not, it shall be so deemed in all cases in which it shall appear, from parol or other evidence, to be so intended." The first clause of this section merely extends the common-law rule that previously obtained in this District, and places devisees and legatees to whom the testator does not stand *in loco parentis,* upon the same basis with children and grandchildren. The second clause apparently was intended to embrace within the common-law rule gifts, whether specific or general, and whether for a fixed or an uncertain sum, when it appears, "from parol or other evidence," that such was the intention of the testator.

In this case the bequest *is* from a person *in loco parentis,* and it appears, from both parol and other evidence, that the advancements were intended as an ademption of the legacy, and therefore it is immaterial whether the above provisions of the Code are applicable or not.  As before stated, Mrs. Payne, in order to establish her son near her, advanced to him nearly $2,500, with which he purchased and conducted a half interest in a hotel property.  She took no security or evidence of indebtedness from him, and repeatedly stated to various witnesses during the time these payments were being made, and shortly thereafter, that the money given Walter would be deducted from his share of her estate at her death.  Declarations made under these circumstances form part of the *res gestæ,* and are therefore admissible on the question of the intent of the testatrix.  *Hine* v. *Hine,* 39 Barb. 507; *Rogers* v. *French,* 19 Ga. 316; *Graves* v. *Spedden,* 46 Md. 527; *Dilley* v. *Love,* 61 Md. 603; *Van Houten* v. *Post,* 32 N. J. Eq. 709.  It would be contrary to every principle of equity and subversive of justice to hold, under the facts surrounding this case, that Walter W. Payne, having previously obtained from his mother, prior to her death and subsequent to the making of her will, sums of money aggregating substantially one half of her estate, is now entitled to one fifth of the remainder.  As the will discloses, her estate at the time these advancements to Walter were made was of uncertain value, consisting almost entirely of realty.  It may well be, therefore, that she then had no idea she was giving Walter so much in excess of his portion.  That the relation of debtor and creditor existed between them is disproved by the utter absence of any evidence of indebtedness, or any evidence tending to show such relation.

Holding, as we do, that this will effected an equitable conversion of the realty, it follows that Miller's deed was in effect merely an assignment of whatever interest Walter had as a legatee.  The intervention of a third party under such conditions does not change the status of the case in any way, for he can claim no higher right than was assigned him.  He took a one-fifth interest, subject to the advancements made to Walter, and,

if those advancements exceed such interest, it is his misfortune. In accepting such an assignment without waiting until the executor had stated his account he took a speculator's chance, and must not now complain because he lost.   As was well said in *Hopkins* v. *Thompson,* 73 Mo. App. 401: "It is not in the power of a third person to impair or embarrass the personal representative in the settlement of an estate by dealing with the heirs upon the supposition that their interest is of a fixed or certain character.   Nor can the other heirs be deprived of some portion of their estate by the intervention or intermeddling of a stranger so as to destroy the equality of descent and distribution."

In the present case the will converted the realty into personalty; the gifts of money to Walter exceeded his distributive share, and were intended, when made, to take the place of and did in law adeem his legacy.   Therefore Miller took nothing by his assignment; and the order must be affirmed, with costs.

*Affirmed.*