*Sadie M. Castruccio v. Estate of Peter A. Castruccio, et al.*, No. 2431, September Term 2016.  Opinion by Arthur, J.

**WILL CONSTRUCTION — CONSIDERATION OF SURROUNDING CIRCUMSTANCES**

Ordinarily, courts may not consider extrinsic evidence of a testator's intentions when construing a will.  Nevertheless, the court may consider evidence relating to the situation of the testator, the testator's relationships with beneficiaries, and the circumstances surrounding the execution of the will.

In this case, to determine the meaning of clauses appearing to limit the right of the testator's wife to recover under the will, the circuit court properly considered undisputed evidence about the circumstances surrounding the execution of the will.  Those circumstances included: the testator's antipathy towards his wife's nephews, the testator's desire that his wife's nephews not receive any portion of his estate, and the testator's efforts to engage in joint estate planning with his wife in order to prevent or persuade her from leaving the testator's assets to the nephews if the testator predeceased her.

**WILL CONSTRUCTION — PLAIN MEANING**

One unnamed item of a testator's will purported to give the remainder of his estate to his wife "should she one, survive [the testator], and two provided that she [had] made and executed a [w]ill prior to [the testator's] death."  Another item stated that if, at the time of the testator's death, the testator's wife did "not have a valid will filed with the Register of Wills in Anne Arundel County dated prior thereto these [sic]," then the testator would give the remainder of the estate to a certain long-time employee of the testator.

Under the most natural reading of this will, these items imposed three conditions to the wife's recovery under her husband's will: (1) she had to survive him; (2) she had to have made and executed a will prior to the husband's death; and (3) she had to have a valid will filed with the Register of Wills for Anne Arundel County dated prior to the testator's death (or, possibly, dated prior to the execution of the testator's will).  Because the wife had failed to meet the third condition, she was not entitled to receive the residue of the estate.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2431

September Term, 2016

ON MOTION FOR RECONSIDERATION

_____

SADIE M. CASTRUCCIO

v.

ESTATE OF PETER A. CASTRUCCIO, et al.

_____

Wright,
Arthur,
Salmon, James P.
　(Senior Judge, Specially Assigned),

JJ.*

_____

Opinion by Arthur, J.

_____

Filed: November 14, 2018

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document " authentic.



Suzanne C. Johnson, Acting Clerk

* Judge Timothy E. Meredith did not participate
in the Court's decision to designate this opinion
for publication pursuant to Md. Rule 8-605.1.

After mounting an unsuccessful challenge to the validity of her late husband's will, a widow contended that, as a matter of law, she was nonetheless entitled to receive virtually all of his estate under that same will. The Circuit Court for Anne Arundel County disagreed and declared that the estate should pass to an alternate residuary beneficiary. The widow appealed, principally arguing that the circuit court erroneously relied on evidence other than the literal language of the will itself. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

Dr. Peter Castruccio died on February 19, 2013. He was survived by his wife of 62 years, appellant Sadie Castruccio. John Greiber, Jr., the Castruccios' lawyer for more than 20 years, was appointed personal representative under the terms of Dr. Castruccio's will. At Mr. Greiber's request, the will was admitted to administrative probate on February 27, 2013.

Dr. Castruccio's will was a six-page document with one codicil. The will began with two, brief introductory paragraphs, which were followed by 11 "items," most of which are not in dispute.

Item 7, labeled "Cash Bequests," consisted of three general legacies, to be distributed "prior to any bequest to [Dr. Castruccio's] beloved wife." The bequests consisted of $800,000.00 for appellee Darlene Barclay, Dr. Castruccio's long-time employee; $100,000.00 for Adriana Lanata, Dr. Castruccio's niece, who lives in Italy; and $100,000.00 for Ernest Stinchcomb, Jr., the Castruccios' handyman. In the codicil, Dr. Castruccio increased the amount of the bequest to Mr. Stinchcomb to $200,000.00.

Item 8 was unlabeled and read as follows:

To my loving wife, Sadie, excluding the individual bequest [sic] made in Item 7, I leave the rest and remainder of my Estate to her should she one, survive me and two provided she has made and executed a Will prior to my death.

Item 10, labeled "Residuary Clause," stated:

Should, at the time of my death, my beloved wife not have a valid Will filed with the Register of Wills in Anne Arundel County dated prior thereto these [sic], I hereby give, devise and bequeath all the rest and residue of my Estate and property, whether imposition, expectancy will remainder [sic], including all property over which I may have Power of Appointment to the following individuals share and share alike per stirpes and not per capita to DARLENE BARCLAY, [at Ms. Barclay's street address].

On March 12, 2013, an attorney for Dr. Castruccio's personal representative told Mrs. Castruccio that, according to the will, any bequest to her was contingent upon her having a "valid Will filed with the Register of Wills in Anne Arundel County dated prior thereto these [sic]." In the same communication, the attorney requested that Mrs. Castruccio supply a copy of any valid will that she had filed with the Register of Wills of Anne Arundel County before Dr. Castruccio executed his will. Mrs. Castruccio had not filed (or deposited) any will with the Register of Wills of Anne Arundel County.

Mrs. Castruccio responded by filing a caveat petition in the Orphans' Court of Anne Arundel County, wherein she challenged the validity of the will. As a defendant, Mrs. Castruccio named her late husband's Estate.[1] Ms. Barclay intervened as a co-defendant.

---

[1] "Because an estate is a collection of assets and liabilities rather than a juridical entity like a corporation or an LLC, the defendant in the caveat proceedings was, technically, Mr. Greiber in his capacity as personal representative." *Castruccio v. Estate*

The caveat proceeding moved to the Circuit Court for Anne Arundel County because Mrs. Castruccio petitioned to transmit issues to that court for trial. *See* Md. Code (1974, 2011 Repl. Vol.), § 2-105(b) of the Estates and Trusts Article.

After discovery, both sides moved for summary judgment in the caveat proceeding. On September 23, 2014, the circuit court granted summary judgment in favor of the Estate and Ms. Barclay and denied Mrs. Castruccio's cross-motion for summary judgment. Mrs. Castruccio appealed. We affirmed (*see Castruccio v. Estate of Castruccio*, 230 Md. App. 118 (2016)), as did the Court of Appeals. *See Castruccio v. Estate of Castruccio*, 456 Md. 1 (2017).

Meanwhile, on January 16, 2014, while the caveat petition was pending, Mrs. Castruccio filed this case in the Circuit Court for Anne Arundel County. In brief, in this case, Mrs. Castruccio requested a declaration that she was the rightful beneficiary of her husband's residuary estate under the will.

At the parties' request, the circuit court stayed this case pending the resolution of the caveat case, but it lifted the stay at Mrs. Castruccio's request once it had rendered its ruling in the caveat case.

After the court lifted the stay, Ms. Barclay filed a counterclaim, in which she requested a declaration that under the will she, and not Mrs. Castruccio, was entitled to receive the residuary estate. In addition, Ms. Barclay invoked Item 6 of the 2010 will, an "in terrorem" or "no contest" clause, which states: "In the event that any party, whether

---

*of Castruccio*, 230 Md. App. 118, 124 n.3 (2016), *aff'd*, 456 Md. 1 (2017). "For ease of reference, however, we shall refer to the defendant as the 'Estate.'" *Id.*

3

they are a beneficiary or not, shall file any proceeding in an attempt to void any and all provisions of this instrument, in that event, such party shall receive no benefits whatsoever from my Estate, in the event that such proceedings are unsuccessful." Ms. Barclay requested a declaration that, because Mrs. Castruccio had challenged the 2010 will in the caveat proceedings, she could take nothing under that will.

The parties presented conflicting interpretations of Dr. Castruccio's will. The conflict centered on whether Item 10 should or should not be read in conjunction with Item 8.

According to the Estate and Ms. Barclay, Items 8 and 10 should be read together to impose three conditions precedent to Mrs. Castruccio's right to recover under the will as a residuary beneficiary: (1) she had to survive her husband (as stated in Item 8), (2) she had to have made a will (as also stated in item 8), and (3) she had to file a valid will with the Register of Wills for Anne Arundel County before her husband's death (as stated in Item 10). Because it was undisputed that Mrs. Castruccio had not filed (or deposited) a will with the Register of Wills for Anne Arundel County before her husband's death, the Estate and Ms. Barclay argued that Mrs. Castruccio had not satisfied the third condition and, hence, could recover nothing. In that event, they said, Ms. Barclay would receive the balance of the estate under Item 10.[2]

---

[2] Initially, the Estate took the position that the phrase "dated prior thereto these" in Item 10 meant that Mrs. Castruccio had to have filed a valid will with the register of wills that was dated before the date of Dr. Castruccio's 2010 will. *See supra* p. 2. During the litigation, the Estate modified its position to assert that under Item 10 Mrs. Castruccio had to have filed a valid will with the register of wills before Dr. Castruccio's death. Because neither party makes an issue of the correct interpretation of the garbled phrase

4

Mrs. Castruccio argued that Items 8 and 10 addressed different scenarios and that they should not be read together. In Mrs. Castruccio's view, Item 8 addressed what should happen if she survived her husband, while Item 10 addressed what should happen if she did not. According to Mrs. Castruccio, under Item 8, she would receive her husband's entire estate (minus the $1.1 million in specific bequests in Item 7 and the codicil) if she survived him and had made and executed a will before his death. On the other hand, she said, if she did not survive her husband, Item 10 dictated that his estate (minus the specific bequests) would go to the beneficiaries whom she had named in *her* will, provided that her will was valid and that it had been filed with the Register of Wills for Anne Arundel County in a probate proceeding. In Mrs. Castruccio's interpretation, if she predeceased her husband and did not leave a will, his estate (minus the specific bequests) would go to Ms. Barclay.

On October 15, 2015, the Estate moved for summary judgment on all of the claims alleged in Mrs. Castruccio's complaint. The Estate specifically sought an order declaring that, because Mrs. Castruccio did not file a valid will with the Register of Wills at any time before Dr. Castruccio's death, she did not meet the requirements of Item 8 and Item 10 of the will. The Estate also sought a declaration that under Item 6 Mrs. Castruccio was precluded from receiving any benefit because of her attempt to invalidate the will.

---

"dated prior thereto these," we, fortunately, are not in the position of "the perhaps not wholly apocryphal English chancellor who said: 'This will has no meaning but it is my plain duty to give it one.'" *Marty v. First Nat'l Bank of Baltimore*, 209 Md. 210, 221 (1956).

On that same day, Ms. Barclay moved for summary judgment on her counterclaim for declaratory relief. On the following day, Mrs. Castruccio filed a cross-motion for summary judgment, claiming that she was the residuary beneficiary under the 2010 will and requesting a declaration to that effect.

On November 10, 2015, the circuit court held a hearing on the summary judgment motions, but it waited to rule while Mrs. Castruccio's appeal in the caveat case was pending in this Court. After this Court affirmed the circuit court's decision in the caveat case in 2016, the court requested re-argument in this case.

In connection with a hearing on November 7, 2016, all parties submitted supplemental exhibits and briefing. Much of the debate concerned the extent to which the court could consider information other than the language of the 2010 will itself. Most notably, that information included evidence of Dr. Castruccio's antipathy toward Mrs. Castruccio's nephews, his desire that the nephews receive none of his assets, and his unsuccessful attempts to involve his wife in joint estate-planning activities.

On January 6, 2017, the circuit court ruled that the interpretation advanced by the Estate and Ms. Barclay was correct. The court issued a declaratory judgment in which it based its decision both on the language of the will itself and on the circumstances surrounding Dr. Castruccio's execution of the will.

Specifically, in paragraph 4 of its declaratory judgment, the court wrote:

> That this Court declares that when construed by their plain and ordinary meaning [sic] and upon reading together Items 8 and 10 of the Will, Plaintiff Sadie M. Castruccio may only take as a residuary beneficiary under the Will if she satisfied three requirements prior to Peter A. Castruccio's death on February 19, 2013: (a) that she survived Peter A.

6

Castruccio; (b) that she made and executed a will; and (c) that Plaintiff Sadie M. Castruccio filed her valid will with the Register of Wills for Anne Arundel County[.]

In addition, in paragraph 5 of its declaratory judgment, the court wrote:

> That in light of undisputed competent evidence of the background to the execution of the Will by Peter A. Castruccio as well as the relevant events that transpired after its execution, this Court declares that Peter A. Castruccio expressed in Items 8 and 10 of the Will that Plaintiff Sadie M. Castruccio may only take as a residuary beneficiary under the will if she satisfied three requirements prior to his death on February 19, 2013: (a) that she survived Peter A. Castruccio; (b) that she made and executed a will; and (c) that Plaintiff Sadie M. Castruccio filed her valid will with the Register of Wills for Anne Arundel County[.]

Because Mrs. Castruccio had not filed a will with the Register of Wills for Anne Arundel County before her husband's death, the circuit court concluded that she had no right to recover under the will. Instead, the court concluded that Ms. Barclay was the sole residuary beneficiary.

In addition to addressing the interpretation of Items 8 and 10, the court considered the contention that, under the "in terrorem" or "no contest" clause in Item 6, Mrs. Castruccio had no right to recover under the will because she had unsuccessfully challenged its validity in the caveat case. The court rejected that contention, because it believed that Mrs. Castruccio had had probable cause to commence the caveat case.

The court issued a memorandum and order in accordance with its decision. In that order, the court denied Mrs. Castruccio's motion for summary judgment; granted the Estate's motion for summary judgment; granted Ms. Barclay's motion for summary judgment on the interpretation of Items 8 and 10; but denied Ms. Barclay's motion for summary judgment as to the effect of Item 6.

7

Mrs. Castruccio noted a timely appeal.

## QUESTIONS PRESENTED

Mrs. Castruccio presents two questions, which we quote:

1. Did the trial court err by basing its construction of the will in whole or in part on extrinsic evidence as to what [Dr. Castruccio] intended the words of his will to mean, instead of determining his intent solely from words he actually used in the four corners of the will?

2. Did the trial court err by denying [Mrs. Castruccio's] motion for summary judgment that pursuant to Item 8 of the Will, she is the beneficiary of [Dr. Castruccio's] residual estate?

We answer "no" to both questions. Hence, we affirm.

## STANDARD OF REVIEW

Both sides agree that this was a proper case for summary judgment. Both sides also agree that there is no genuine dispute as to any material fact. They disagree, however, about which of them was entitled to judgment as a matter of law. "The standard of review for a declaratory judgment entered as a result of the grant of a motion for summary judgment is 'whether that declaration was correct as a matter of law.'" *Catalyst Health Solutions, Inc. v. Magill*, 414 Md. 457, 471 (2010) (quoting *Olde Severna Park Improvement Ass'n, Inc. v. Gunby*, 402 Md. 317, 329 (2007)).

## DISCUSSION

### I.     The General Rules of Will Construction

The general principles for construing a will are well established. "[T]he intention of the testator is the polar star, and must prevail, if consistent with the rules of law[.]" *Walters v. Walters*, 3 H. & J. 201, 205 (1811). "When construing a will, the 'paramount concern of the court is to ascertain and effectuate the testator's expressed intent.'"

*Pfeufer v. Cyphers*, 397 Md. 643, 649 (2007) (quoting *Emmert v. Hearn*, 309 Md. 19, 23 (1987)); *accord Friedman v. Hannan*, 412 Md. 328, 339 (2010). "[T]he search is not for the testator's 'presumed [intention] but for his [or her] *expressed intention.*'" *Pfeufer v. Cyphers*, 397 Md. at 649 (quoting *LeRoy v. Kirk*, 262 Md. 276, 279 (1971)). "Generally, that intent is 'gathered from the four corners of the will,'" *id.* (quoting *Reedy v. Barber*, 253 Md. 141, 148 (1969)), "with the words of the will given their 'plain meaning and import.'" *Id.* (quoting *Emmert v. Hearn*, 309 Md. at 23); *accord Friedman v. Hannan*, 412 Md. at 339-40. "'Th[e] expressed intention of a testator must be gathered from the language of the entire will, particularly from the clause in dispute, read in the light of the surrounding circumstances at the time the will was made.'" *Vito v. Grueff*, 453 Md. 88, 110 (2017) (quoting *Marty v. First Nat'l Bank of Baltimore*, 209 Md. 210, 217 (1956)).

The testator's intention must be gathered from "a consideration of all the provisions contained in [the will], without regard to the order in which those provisions occur." *Smithers v. Hooper*, 23 Md. 273, 285 (1865). In keeping with that principle, "'a will and codicil are to be construed together as one instrument and *reconciled as far as practicable.*'" *In the Matter of the Albert G. Aaron Living Trust*, 457 Md. 699, 719 (2018) (quoting *Jones v. Holloway*, 183 Md. 40, 45 (1944)) (emphasis added in *In the Matter of the Albert G. Aaron Living Trust*).

"[W]hen recognized legal terms are used, the testator is presumed to have used such terms with the knowledge of their technical meaning, and with the purpose of employing that meaning in the disposition of his property." *Rowe v. Rowe*, 124 Md. App. 89, 97 (1998) (quoting *Patchell v. Groom*, 185 Md. 10, 15 (1945)). On the other hand,

9

"where a will is drawn by a lay[person], 'the language used may be given the meaning it would commonly have to a person in his [or her] situation[.]'" *Shriners Hosps. for Crippled Children v. Maryland Nat'l Bank*, 270 Md. 564, 570 (1973) (quoting *Buchwald v. Buchwald*, 175 Md. 103, 111 (1938)).

## II.     Surrounding Circumstances

The principal issue in this appeal is whether the circuit court erred when it considered evidence besides the language of the will itself. Mrs. Castruccio argues that it did; the Estate and Ms. Barclay argue that it did not.

At page 14 of her brief, Mrs. Castruccio asserts that, "based on dubious, unspecified evidence, the trial court concluded that [Dr. Castruccio] wanted to prevent [her] from leaving assets to people he did not like, and intended his will to provide leverage to get [her] to cooperate in his estate planning goals." (Footnote omitted.) She contends that the court committed reversible error by considering anything other than the language of the will itself. Her position is untenable.

From the court's opinion, it is quite clear that the court did not base that declaration on "dubious, unspecified evidence." Rather, over the course of three pages in the opinion, the court detailed the undisputed evidence of circumstances that it considered "relevant to this inquiry":

- Dr. Castruccio was born on January 11, 1925, and died on February 19, 2013. He was 88 years old at the time of his death and 85 years old when the 2010 will was drafted.

- Dr. Castruccio was survived by his wife, with whom he was residing at the time of his death. Mrs. Castruccio was 92 years old at the time of her husband's death.

- Dr. and Mrs. Castruccio were married in 1950. They had been married for 62 years at the time of his death.[3]

- Dr. Castruccio had a Ph.D. in electrical engineering. He had worked in national defense and in the space program before his retirement.

- For several decades, Dr. and Mrs. Castruccio had jointly run and managed a successful real estate investment and real estate management business. Both participated in the operation of the business, and both were knowledgeable about the assets of the business and transactions in which the business had engaged.

- Dr. Castruccio had no children, and his parents had predeceased him.

- Mrs. Castruccio had a child from a prior marriage, but that child had died in 1985.

- Dr. Castruccio's will was admitted to probate on February 27, 2013.

- Mrs. Castruccio had made and executed a will before her husband's death.

---

[3] In the opinion in which it rejected Mrs. Castruccio's challenge to the validity of the 2010 will, the Court of Appeals also mentioned Dr. Castruccio's date of death, his age at the time of his death, the fact that his wife survived him, her age at the time of his death, and the number of years that they had been married. *Castruccio v. Estate of Castruccio*, 456 Md. at 9.

11

- Mrs. Castruccio had not filed or deposited her will with the register of wills before Dr. Castruccio's death.

- Dr. Castruccio had executed an earlier will in 2008 and had filed or deposited it with the register of wills at that time.

- On June 29, 2009, Dr. Castruccio told Mr. Greiber to retrieve the 2008 will.

- Dr. Castruccio had known Mr. Greiber for 20 years. Mr. Greiber had represented Dr. Castruccio and his wife for 15 years before Dr. Castruccio's death. He had an office in the location where the Castruccios conducted their real estate business. He was paid a monthly fee of about $3,500 to $4,000 from the Castruccios' joint funds.

- Dr. Castruccio marked up the 2008 will with handwritten interlineations or made additions on a separate sheet. The mark-ups included changes to Items 8 and 10 of the 2008 will.

- On September 28, 2010, Dr. Castruccio and Mr. Greiber met to finalize the changes to the will. The changes were transcribed by Darlene Barclay, who had been employed by the Castruccios' real estate business since 1984 as an office manager and, later, as a property manager. Dr. Castruccio viewed Ms. Barclay with affection because of her long service.

- On September 29, 2010, Dr. Castruccio signed the will in the presence of Mr. Greiber; Mr. Greiber's daughter; and Ms. Barclay's daughter, Kim, who worked in the office.[4]

- Dr. Castruccio's 2010 will was filed or deposited with the register of wills.

- In the summer of 2012, Dr. Castruccio had Mr. Greiber prepare a codicil, which is dated July 13, 2012. Dr. Castruccio executed the codicil, and Mr. Greiber filed it with the register of wills on July 19, 2012.

- At least since 2008, Dr. and Mrs. Castruccio had been engaged in an effort to divide up their assets for tax and estate planning purposes. Dr. Castruccio had tried to persuade Mrs. Castruccio to "engage in a joint will-drafting effort." Mrs. Castruccio "was not always cooperative" with her husband "in this joint effort."

- Dr. Castruccio "had a distaste" for three of Mrs. Castruccio's nephews, who had obtained loans from the Castruccios and who had involved them in a federal criminal investigation and other litigation.

---

[4] In the opinion in which it rejected Mrs. Castruccio's challenge to the validity of the 2010 will, the Court of Appeals also discussed the sequence of events in which Dr. Castruccio signed the 2008 will, asked his attorney to retrieve it from safekeeping so that he could revise it, marked up the document in the presence of Mr. Greiber, asked Ms. Barclay to make the changes, reviewed the draft with Mr. Greiber on September 28, 2010, and signed the new will on the following day in the presence of Mr. Greiber, Mr. Greiber's daughter, and Ms. Barclay's daughter. *Castruccio v. Estate of Castruccio*, 456 Md. at 9.

In light of the court's detailed accounting of the factual bases for its decision, there is no merit to Mrs. Castruccio's contention that the decision rests on some "unspecified" evidence.[5]

In fact, in her brief, Mrs. Castruccio herself refers to much of the same background information about Dr. Castruccio and the circumstances surrounding the execution of his will. At page 11 of her brief, Mrs. Castruccio writes that she survived her husband; that he had no other heirs; that she and Dr. Castruccio had been married for 62 years; that they had no children; that she had a child from a previous marriage, who had died in 1985; and that she had a sister and a number of nieces and nephews. On the same page, Mrs. Castruccio also writes that she and her late husband were partners in their real estate business ventures; that Mr. Greiber had represented them for more than 20 years; that both she and Dr. Castruccio had numerous wills and draft wills that left their estates to the surviving spouse; that Mr. Greiber had drafted a will for Dr. Castruccio in 2008; that he had drafted a revised will for Dr. Castruccio in 2010; and that, at the time of her husband's death, she had made and executed a will, but had not deposited it for safekeeping with the register of wills. Having referred to this information

---

[5] At page 14 n.4 of her brief, Mrs. Castruccio complains that the court never ruled on her objection to the admissibility of the larger volume of evidence that the Estate and Ms. Barclay sought to introduce. She also complains that the court gave no indication of what evidence it admitted and what it did not. To the contrary, over the course of three pages of its opinion, the court clearly delineated the evidence that it considered. By implication, it considered nothing else.

in the apparent belief that it was relevant background for the interpretation of the will, Mrs. Castruccio cannot plausibly fault the circuit court for referring to it as well.[6]

Mrs. Castruccio's central complaint is that, on the basis of the evidence beyond the language of the will itself, the circuit court concluded that Dr. Castruccio "wanted to prevent" her "from leaving assets to people he did not like" and that he "intended the will to provide leverage to get [her] to cooperate in his estate planning goals." The source of this information was not only very well known to the litigants, but was detailed in both of the published appellate opinions that rejected Mrs. Castruccio's challenge to the 2010 will. As the Court of Appeals wrote:

> According to Mr. Greiber, [Dr. Castruccio] was concerned that [Mrs. Castruccio] would leave her estate to certain family members of whom he did not approve. He sought assurances that [Mrs. Castruccio] would not leave her assets, or at least the assets that she would receive from him, to those family members. Thus, he conditioned [Mrs. Castruccio's] bequests under the 2010 Will upon her having made and filed a will that disclosed whether she intended to make testamentary gifts to those family members.

*Castruccio v. Estate of Castruccio*, 456 Md. at 10 n.2; *accord Castruccio v. Estate of Castruccio*, 230 Md. App. at 123 n.2.

---

[6] Mrs. Castruccio's brief refers to additional background information that the court did not discuss. On page 5 of her brief, she writes that Dr. Castruccio's eyesight was extremely poor because of his advanced macular degeneration; that he could not read without the aid of a magnifier and lamps, which were present only in his residence (and apparently not in Mr. Greiber's office); and that "virtually every day he got so drunk in the office, on wine supplied by [Ms. Barclay and Mr.] Greiber, that he slurred his words, fell down, and lost his ability to make sense." She adds that if Dr. Castruccio was "highly intoxicated" and "unable to see clearly," he "could have signed anything put in front of him." Suffice it to say that Mrs. Castruccio's reference to these facts and allegations is in some tension with her contention that the court could not consider any evidence other than the words of the will itself.

The question before us is whether the circuit court erred in considering that evidence in construing Dr. Castruccio's will.

As a general rule, Maryland courts do not allow "extrinsic evidence" of a testator's wishes or intentions. The courts have expressed two reasons for that rule. The first reason parallels the concerns underlying the parol evidence rule in the law of contracts: "an extrinsic statement may not be received to modify or nullify the words of a document." *Darden v. Bright*, 173 Md. 563, 568 (1938); *accord Emmert v. Hearn*, 309 Md. at 23 (quoting *Fersinger v. Martin*, 183 Md. 135, 138 (1944), for the proposition that "'[e]xtrinsic evidence should not be admitted to show that the testator meant something different from what his language imports'"). The second reason relates more directly to the law of wills and other testamentary instruments: "an oral utterance would not be a compliance with the statutory requirement that a will be in writing." *Darden v. Bright*, 173 Md. at 568.

Mrs. Castruccio argues that under Maryland law a court may consider extrinsic evidence only to resolve a "latent ambiguity," which is "an ambiguity that is not apparent merely from reading the text of the donative document but becomes apparent from extrinsic evidence." Restatement (Third) of Property (Wills and Other Donative Transfers) § 11.1 cmt. c (2001). "Language in a will, for example, that devises property 'to my cousin John,' contains a latent ambiguity if evidence extrinsic to the document reveals that the testator had no cousin named John when he executed his will but did then have a nephew named John and a cousin named James." *Id.* A latent ambiguity is to be contrasted with a patent ambiguity, which "is apparent on the face of the will itself, as,

16

for example, when different clauses of a will dispose of the same plot of land to different devisees." *Emmert v. Hearn*, 309 Md. at 27 n.4. No one contends that this case involves a latent ambiguity.

In defense of her contention that a court may not consider extrinsic evidence in the absence of a latent ambiguity, Mrs. Castruccio cites this Court's broad and categorical statement in *Click v. Click*, 204 Md. App. 349, 366 (2012): "It is well-settled in Maryland that extrinsic evidence of the circumstances surrounding execution of a will is admissible in construing a will **only** if the will contains a latent ambiguity." (Emphasis in original.)

Mrs. Castruccio recognizes, however, that in *Click* this Court supported its broad and categorical statement with a quotation from a recent Court of Appeals decision that is decidedly more limited and more qualified than the statement in *Click* itself: "'*Ordinarily*, extrinsic evidence is not admissible to prove the testator's intent unless there is a latent ambiguity.'" *Id.* (emphasis added) (quoting *Friedman v. Hannan*, 412 Md. at 340). Quoting the Court of Appeals, this Court went on to say:

> Yet, when ascertaining that intent, the court may consider "the situation of the testator and his relations with the parties to whom he has devised or bequeathed his property[.]" In that regard, the will must be "read in the light of the surrounding circumstances existing at the time of its execution."

*Id.* (quoting *Friedman v. Hannan*, 412 Md. at 340) (internal citations omitted).

In other words, despite the general prohibition on the consideration of extrinsic evidence, both this Court and the Court of Appeals have made it clear that a court may still consider "the situation of the testator," his or her "relations with" the beneficiaries

17

under the will, and the circumstances surrounding the execution of the will. Tellingly, Mrs. Castruccio omits that portion of the quotation from her brief.

Many, many Maryland cases have stated or applied the proposition that, to understand or explain the words that a testator has written, a court may consider evidence of the circumstances that surrounded the execution of the will. *See*, *e.g.*, *Vito v. Grueff*, 453 Md. at 107 (quoting *Banghart v. Vieweg*, 261 Md. 214, 218 (1971), *which quoted Walston v. White*, 5 Md. 297, 304 (1853)) ("'any evidence is admissible, which, in its nature and effect, simply explains what the testator has written'"); *id.* at 110 (quoting *Marty v. First Nat'l Bank of Baltimore*, 209 Md. at 217 ("'[t]h[e] expressed intention of a testator must be gathered from the language of the entire will, particularly from the clause in dispute, read in the light of the surrounding circumstances at the time the will was made'"); *see also Veditz v. Athey*, 239 Md. 435, 441 (1965) (affirming the admission of "extrinsic evidence pertaining to the circumstances of the testatrix, the objects of her bounty and the nature of the property involved"); *Hebden v. Keim*, 196 Md. 45, 50 (1950) ("[o]ne of the familiar rules for the construction of wills is that the Court should consider not only the actual words used in the will but also the situation of the testator and his relations with the objects of his bounty"); *Jones v. Holloway*, 183 Md. 40, 47 (1944) (stating that "the rule excluding extrinsic evidence does not prevent admission of evidence which simply explains what the testator has written for the purpose of determining the subject of disposition, the objects of his bounty, or the quantity of interest intended to be given by his will"); *Robinson v. Mercantile Trust Co. of Baltimore,* 180 Md. 336, 339 (1942) ("[i]n ascertaining [the intention of the testator], not

18

only the actual words used in the will, but also the situation of the testator and his relations with the parties to whom he has devised or bequeathed his property are important elements"); *id.* (quoting *Henderson v. Henderson*, 64 Md. 185, 188-89 (1885)) ("'[t]he peculiar situation of this testatrix, and the relations subsisting between her and the recipients of her bounty, must therefore be considered in connection with the language of the document itself, in order that we may be fully enlightened in regard to the real motives and intent by which she was controlled in the execution of this will'"); *Emory v. Emory*, 91 Md. 531, 532 (1900) ("intention is not, of course, to be made out or arrived at by mere surmise, but must be found in the words of the will as they are read in the light of the circumstances which surrounded the person who used them at the time he executed the instrument"); *Taylor v. Watson*, 35 Md. 519, 524 (1872) ("[t]he intention of the testator is to be gathered from all its provisions, developed by the light of surrounding circumstances"); I Philip L. Sykes, *Probate Law and Practice* § 51 (1956) ("[t]he intention of the testator must be gathered from the four corners of the instrument and from the pertinent circumstances surrounding the testator at the time of its execution").

Similarly, in discussing the consideration of surrounding circumstances, the courts sometimes talk of placing themselves, "in the traditional place, behind the armchair of the testator as he contemplated the disposition he wished to be made to the objects of his bounty[.]" *Marty v. First Nat'l Bank of Baltimore*, 209 Md. at 218; *see also Monmonier v. Monmonier*, 258 Md. 387, 388 (1970) (referring to "[t]estimony that put the Court in the armchair of the testatrix"); *Grace v. Thompson*, 169 Md. 653, 657 (1936) (quoting Edgar G. Miller, *The Construction of Wills in Maryland* § 12 (1919) ("'the court will put

19

itself in the testator's place, in his armchair; will see the circumstances that he saw; appreciate his surroundings as he appreciated them; and then give to the language he has used in his will the meaning which these circumstances and these surroundings indicate he intended that language to have'"); *Falconer v. Kirby*, 90 Md. 594, 596 (1900) ("[w]e must put ourselves, as nearly as we can, in the testator's arm-chair; see the circumstances that he saw; appreciate his surroundings as he appreciated them; and then give to the language he has used in his will the meaning which these circumstances and these surroundings indicate he intended that language to have"); *Littig v. Hance*, 81 Md. 416, 425 (1895) (quoting *Boyes v. Cook*, 14 Ch. Div. 56 (1880)) ("[f]or the purpose of ascertaining the testator's intention, as expressed in his words and not as an independent fact, 'you may,' as remarked by Lord Justice James, 'place yourself, so to speak, in his armchair, and consider the circumstances by which he was surrounded when he made his will, to assist you in arriving at his intention'"); *Hammond v. Hammond*, 55 Md. 575, 580 (1881) ("[i]n order to discover the intention of the testator, it is the duty of the Court to put themselves in the place of the testator, and then see how the terms of the will affect the property or the subject-matter"); *Taylor v. Watson*, 35 Md. at 524 ("[t]he Court must put themselves in the place of the party making the instrument").

Because "[a]djudicated cases are helpful almost solely as illustrations" in the field of will construction (*Payne v. Payne*, 136 Md. 551, 555 (1920)), we offer the following illustrations from cases, in which the Court of Appeals has approved the consideration of evidence of circumstances surrounding the execution of a will in order to explain or understand the decedent's intentions:

*Jones v. Holloway*

In *Jones v. Holloway*, 183 Md. at 42, the testator's first codicil had placed his "brick bungalow home" in the residuary estate, but a second codicil conveyed it to his second wife for life. The Court was required to decide, first, whether the "home" included a filling station, a weatherboard shop, and other land that was separated from the house itself by a drainage ditch and a row of evergreens, or whether the testator had intended to divide his property into separate parts when he built the shop, dug the ditch, and planted the trees. *Id.* In deciding that the "home" included the land on the other side of the ditch and the trees, the Court cited authorities that hold that "the word 'home' has a much broader meaning than 'house.'" *Id.* at 43 (quoting *Willett v. Carroll*, 13 Md. 459, 468 (1859)). But the Court also referred to the widow's testimony "that her husband built the shop at her request, and that he planted the evergreens merely for the purpose of beautifying their home." *Id.* at 44.

In addition to deciding what the testator meant when he referred to the "brick bungalow home," the Court was required to decide whether a devise of "the farm known as the Palmer Farm" included 160 acres of forest adjacent to the farmland itself. In holding that the term "the Palmer Farm" included the forest, the Court explicitly referred to "extrinsic evidence" that "explains what the testator has written" (*id.* at 47) – i.e., to evidence of surrounding circumstances. In particular, the Court referred to testimony that both tracts were known as "the Palmer Farm," as well as testimony that the testator had referred to the wooded tract as "the Palmer Farm" and not by another name. *Id.* On the

basis of that testimony, the Court affirmed the lower court's decision that the term "the Palmer Farm" referred to both tracts.

## *Hebden v. Keim*

In *Hebden v. Keim*, 196 Md. at 47, the testatrix made a gift to her husband for life. "[F]rom and after" the husband's death, the testatrix's brother was to receive the remainder, unless he died before both the testatrix and her husband. *Id*. If the brother died before both the testatrix and her husband, the gift would go to the residuary estate (*id*.), whose beneficiaries were the testatrix's cousins. *Id*. at 48, 50-51.

The brother survived the testatrix, but predeceased her husband. *Id*. at 47. The Court was required to decide whether the testatrix would have intended the gift to go to her brother's heirs if he did not survive her husband.

In resolving the question against the brother's heirs, the Court explicitly discussed evidence of the circumstances surrounding the execution of the will. *Id.* at 50-51. It referred to the brother's will, which predated the testatrix's will, and in which he emphatically declared that he wanted her and her husband to receive nothing. *Id.* at 50. It also referred to suggestions that the animosity of the brother's heirs had led to the brother's estrangement from his sister. *Id.* It concluded that the testatrix had probably been "more desirous" to give the bequest to her cousins, the residuary beneficiaries, than to the brother's heirs, "who were not related to her and who even then may have been alienating the affection of her brother." *Id.* at 50-51.

*Marty v. First National Bank of Baltimore*

In *Marty v. First National Bank of Baltimore*, 209 Md. at 213-15, the testator had drafted an excruciatingly complicated will that was clearly designed to delay the distribution of the corpus of various trusts – the question was how long the distribution was to be delayed. *See id*. at 216. To answer that question, the Court envisioned what it would see if it put itself, "in the traditional place, behind the armchair of the testator[,] as he contemplated the disposition he wished to be made to the objects of his bounty[.]" *Id.* at 218. From that standpoint, the Court wrote, "we would be standing behind a man who was not unaware of the problems and methods of early, as contrasted with late, vesting of trust estates and one upon whom had been urged the desirability of continuing property in trust." *Id.* As the basis for that statement, the Court cited its earlier opinion in a dispute concerning the estate of the testator's mother. *Id.* (citing *Safe Deposit & Trust Co. v. Bouse*, 181 Md. 351 (1943)).

*Veditz v. Athey*

In *Veditz v. Athey*, 239 Md. at 441, the Court illustrated the difference between extrinsic evidence, which is not admissible, and evidence of surrounding circumstances, which is.

In Item Second of her will, the testatrix gave most of her furniture, silver, china, jewelry, linens, and other personal and household effects to a niece. *Id.* at 438. In a second codicil, the testatrix reported that she had purchased a house after she had executed the will, and she modified Item Second of the will to give her interest in the house to a second niece, Veditz. *Id.* at 439. In yet a third codicil, the testatrix revoked

23

Item Second altogether and substituted a provision that gave most of her furniture, silver, china, jewelry, linens, and other personal and household effects to Veditz rather than the other niece. *Id.* at 440. The question before the Court was whether the third codicil implicitly revoked the second, in which the testatrix had given her interest in the house to Veditz, or whether the second codicil and the gift of the interest in the house remained in effect. *See id*. at 441-42.

A majority of the Court held that the third codicil revoked each prior codicil that had modified Item Second, including the second codicil by which the testatrix had given her interest in the house to Veditz. In reaching that decision, the Court approved the admission of evidence showing that before the testatrix executed the second codicil, she had executed a strawman deed by which she conveyed half of her interest in the house to herself for life, with the remainder going to Veditz. *Id.* at 439, 441. (Thus, Veditz would receive at least a half interest in the house upon the testatrix's death even if the third codicil revoked the second.) The Court explained that "[t]he evidence as to the relationship of the two nieces, the acquisition of the real estate, and the strawman deed in connection therewith, was admissible as extrinsic evidence pertaining to the circumstances of the testatrix, the objects of her bounty and the nature of the property involved." *Id.* at 441.

On the other hand, the *Veditz* Court observed that the trial court had excluded testimony to the effect that the testatrix had expressed an intention to leave the entire property to Veditz and testimony that testatrix had said that she was buying the house "so that [Veditz] would have something in her old age." *Id.* The trial court also excluded

24

testimony from the testatrix's lawyer about "what took place in his office between the testatrix and himself when the Third Codicil was prepared and executed." *Id.* This testimony was the impermissible strain of extrinsic evidence that would attempt to vary, modify, or contradict the testatrix's expression of her intentions in the will and the codicil themselves.

*Stinchcomb v. Mercantile-Safe Deposit and Trust Co.*

In *Stinchcomb v. Mercantile-Safe Deposit and Trust Co.*, 257 Md. 482, 484-85 (1970), the testator and a business partner had established two prosperous companies. In his will, the testator directed that his shares (or the proceeds from the sale of the shares) be held in trust for his wife during her life and that they be distributed in various quantities to his partner and two key employees upon her death. *Id.* at 486-88. The testator's widow survived him by more than 40 years (*id*. at 484, 490), during which the shares were sold (*id*. at 488), and the value of the sale proceeds appreciated considerably. The question before the Court was whether the capital appreciation would go to the business partner and the employees or to the residuary beneficiary. *See id*. at 490.

Early in its opinion, the Court touched upon the close relationship between the testator and his former partner, and between the testator and the two employees. *Id.* at 485. "It is against such a background," the Court wrote, that "the actions of the testator in making his will must be viewed." *Id.* (citing *Hebden v. Keim*, 196 Md. at 48, 50).

When it turned to the substance of the case, the Court referred to the testator as "an eminently successful businessman." *Id.* at 496. It surmised that the testator would have anticipated appreciation in the value of his stock. It inferred that he "was perfectly

25

willing that the objects of his bounty, the friends who had worked with him in making his business a success, share in such capital appreciation." *Id.* at 497. Referring back to the language of the will, it observed that the testator did not limit the partner and the employees to a share of the appraised value of the stock at the time of his death, but bequeathed them a percentage of the net proceeds from a sale. The testator, the court said, would have recognized that his wife's life tenancy "might well continue for some years" (*id.*), which made it "logical" to conclude that he wanted his business associates to receive a portion of the "the corpus created by the investment of the proceeds of the sale of the stocks." *Id.* In the end, "[v]iewing the will in its entirety and the totality of circumstances surrounding its execution," the Court determined that the testator intended the capital appreciation to go to his former partner and the key employees. *Id.* at 498.

*Friedman v. Hannan*

In *Friedman v. Hannan*, 412 Md. at 333-34, the testator's will contained bequests to his wife and to his wife's family members. After he made the will, the testator and his wife were divorced. *Id.* at 332. Under § 4-105(4) of the Estates and Trusts Article, the divorce resulted in the revocation of the bequests "relating to [his] spouse." The question before the Court was whether a trial court erred in finding that the testator's divorce resulted in the revocation of the bequests to his ex-wife's family members, as well as the bequests as to the ex-wife herself. *Id.* at 340; *see id.* at 332, 336.

In framing the issue at the outset of the opinion, the Court wrote that "[a] court should utilize the terms of the will and circumstances surrounding its execution to determine whether a bequest 'relat[es] to the spouse' within the meaning of Section 4-

105(4)." *Friedman v. Hannan*, 412 Md. at 332. In the body of its opinion, the Court reiterated that proposition when it wrote that "the will must be 'read in the light of the surrounding circumstances existing at the time of its execution.'" *Id.* at 340 (quoting *Hebden v. Keim*, 196 Md. at 48). In the same vein, the Court added later that "a court may consider the relationships between the testator and his beneficiaries when investigating intent." *Id.* at 344.

As recounted by the Court, the evidence reflected that the testator did not know his wife's family before the marriage and that "during a large portion of the marriage he was employed at sea." *Id.* at 345. The Court concluded that "the trial court did not err in considering the tenuous nature of [the testator's] relationship to his spouse's family in concluding that [he] would not have intended that bequest to survive a divorce." *Id.* at 344-45.

*    *    *    *    *

In view of these authorities, it is beyond any serious dispute that the circuit court could properly consider the circumstances surrounding the execution of Dr. Castruccio's will for the purpose of understanding or explaining what he had done. Those circumstances included Dr. Castruccio's antipathy toward Mrs. Castruccio's nephews, his desire that they not receive any portion of his estate, and his efforts to engage her in a discussion of estate planning in order to prevent or persuade her from leaving his assets to her nephews if he predeceased her. The evidence explained why Dr. Castruccio had revised his will in 2010 to add an additional condition to his wife's ability to recover – the condition in Item 10 that required her not only to have made a will, but also to have

27

filed a valid will with the register of wills. That evidence is not entirely different from the dispositive evidence in *Hebden v. Keim*, 196 Md. at 47, that the testatrix would not have wanted her brother's heirs to inherit part of her estate, because they had turned him against her. Finally, it is not evidence that Dr. Castruccio intended to make a gift that the will does not contain, or that he did not intend to make a gift that the will does contain: in other words, it is not the sort of extrinsic evidence that would be inadmissible on the ground that it varies, modifies, or contradicts the literal language of the will.[7]

In a final assault, Mrs. Castruccio argues that the key evidence of surrounding circumstances was inadmissible, because it depended on the testimony of Ms. Barclay and Mr. Greiber, who had an interest in the outcome. To the contrary, it is an elementary principle of the law of evidence that, while a witness's interest or bias may affect the weight that a factfinder assigns to the testimony, it does not determine the admissibility of the witness's testimony.

---

[7] As the circuit court observed, Dr. Castruccio's will would not have been particularly effective in achieving his goals. Even if he had succeeded in motivating Mrs. Castruccio to file (or deposit) a will with the register of wills, he would have had no way of knowing what the will said unless she chose to tell him. Furthermore, even if Mrs. Castruccio made and filed a valid will that satisfied her husband because it left nothing to her nephews, she could change it as soon as he died, when she would have satisfied all of the conditions to recover under his will. Dr. Castruccio could have employed other means, short of disinheriting his widow, to prevent her from passing his assets to her nephews. He could, for example, have created a testamentary trust, under which she would receive the income from the assets during her life, with the remainder going somewhere else. As the circuit court remarked, however, it appears that Dr. Castruccio either did not receive or did not heed competent estate-planning advice.

28

In this case, the testimony, interested or not, was undisputed. Under Rule 2-501(f), a court shall enter judgment in favor of the moving parties if the motion and response show that there is no genuine dispute as to any material fact and that the moving parties are entitled to judgment as a matter of law. The court, therefore, did not err in directing the entry of summary judgment in favor of the Estate and Ms. Barclay.[8]

### III. Literal Language

As an additional ground for the declaratory judgment, the circuit court concluded, on the basis of the literal language of the will itself, that Mrs. Castruccio had to meet three conditions to recover under her late husband's will: she had to survive him (as required by Item 8), she had to have made a will (as required by Item 8), and she had to have filed a valid will with the Register of Wills of Anne Arundel County (as required by Item 10). Because Mrs. Castruccio had indisputably failed to meet the third condition, the court declared that she was not entitled to recover. If that ruling was correct, we can uphold the judgment on that ground even if the court erred in considering the circumstances surrounding the execution of the will.

In concluding that Item 10 imposed a third, unmet condition to Mrs. Castruccio's recovery, the court rejected her contrary interpretation of Items 8 and 10. Under that

---

[8] Mrs. Castruccio observes that, in the declaratory judgment, the circuit court referred to the background to the execution of the will as well as "the relevant events that transpired after its execution." She complains that the court could not properly rely on events that occurred after the execution of the will. We disagree, because it is apparent from the court's opinion that it was referring only to Dr. Castruccio's death and to Mrs. Castruccio's undisputed failure to file (or deposit) a valid will with the register of wills before his death.

interpretation, Item 8 would give Dr. Castruccio's entire estate to Mrs. Castruccio, provided that she survived him and had made a will, both of which conditions she satisfied. Item 10, in Mrs. Castruccio's interpretation, would come into play only if she did not survive her husband. In that event, she argued, Dr. Castruccio's estate would go to whomever she had designated as the beneficiaries of her estate if she had "a valid Will filed with the Register of Wills of Anne Arundel County." She likens Item 10 to an "anti-lapse statute" like § 4-403 of the Estates and Trusts Article, under which a gift in a will may be redirected to a beneficiary's heirs if the beneficiary predeceases the testator.

A central problem with Mrs. Castruccio's interpretation is that Item 10 does not actually say anything about her predeceasing her husband. Under the caption "Residuary Clause," Item 10 states, in pertinent part: "Should, at the time of my death, my beloved wife not have a valid Will filed with the Register of Wills in Anne Arundel County dated prior thereto these [sic], I hereby give, devise and bequeath all the rest and residue of my Estate and property . . . to DARLENE BARCLAY . . . ." Item 10 talks about where the residuary estate should go if Mrs. Castruccio did not have a valid will filed with the register of wills; it does not say that her estate plan becomes his. If we were to interpret this language to mean that Dr. Castruccio had incorporated his wife's estate plan into his own will in the event that she predeceased him and left a will, we would have to rewrite his will, which we cannot do. *See, e.g.*, *Frank v. Frank*, 253 Md. 413, 420 (1969); *Gaither v. Fidelity-Nat'l Bank & Trust Co*., 208 Md. 8, 14 (1955).

30

Both sides claim to find support in the changes that Dr. Castruccio made to his previous will, from 2008. In the 2008 will, Item 10, which was also captioned "Residuary Clause," stated in pertinent part:

> Should my beloved wife predecrease [sic] me, I hereby give, devise, and bequeath all the rest and residue of my Estate and property . . . to DARLENE BARCLAY . . . .

The changes that Dr. Castruccio made to Item 10 in the 2010 will are illustrated below:

> Should, at the time of my death, my beloved wife ~~predecrease me~~ not have a valid Will filed with the Register of Wills in Anne Arundel County dated prior thereto these, I hereby give, devise, and bequeath all the rest and residue of my Estate and property . . . to DARLENE BARCLAY . . . .

In our view, these changes emphatically refute Mrs. Castruccio's contention that her husband intended Item 10 to apply in case she predeceased him: Item 10 of the 2008 will would certainly have applied in that event, but Dr. Castruccio deleted the language about his wife predeceasing him from the 2010 will. As the Estate argues on page 6 of its brief, "Mrs. Castruccio now seeks to revise the Will under the guise of construction by re-inserting a key provision from the 2008 Will which Dr. Castruccio specifically removed ('should . . . [my wife] pre-decease me')."

Mrs. Castruccio focuses on the word "filed" in Item 10 ("Should, at the time of my death, my beloved wife not have a valid Will filed with the Register of Wills in Anne Arundel County . . ."). In the circuit court, she argued that "filed" does not mean "deposited for safekeeping before the testator's death," as the Estate and Ms. Barclay claimed. Instead, she argued that "filed" has a technical, legal meaning, which is that the

31

will had been filed in a probate proceeding after the testator's death. Employing the technical meaning of "filed," she said, would support her interpretation of Item 10 as a kind of anti-lapse provision, because she could not "have a valid Will filed with the Register of Wills in Anne Arundel County" until after she was dead.

The circuit court correctly rejected that contention. It recognized that the will was drafted largely by Dr. Castruccio, a layperson. Accordingly, the court gave the word "filed" "'the meaning it would commonly have to a person in his situation.'" *Shriners Hosps. for Crippled Children v. Maryland Nat'l Bank*, 270 Md. at 570 (quoting *Buchwald v. Buchwald*, 175 Md. at 111).

In the codicil to his will, Dr. Castruccio himself referred to the 2010 will as his "Will *on file* with the Register of Wills for Anne Arundel County for safekeeping." (Emphasis added.) Dr. Castruccio's use of the words "on file" confirms the circuit court's conclusion that, in requiring his wife to "have a valid Will filed with the Register of Wills in Anne Arundel County," he did not use the word "filed" in a technical, legal sense, but in the less formal sense of having it filed or deposited for safekeeping. *See Jones v. Holloway*, 183 Md. at 45 ("[i]f the testator has used words in one part of his will in a way that clearly indicates his own understanding of their import, whether or not it differs from their ordinary or legal meaning, there can be no safer way to ascertain his purpose than to give to the same words when they appear elsewhere in the will the same

32

meaning that he attached to them in the instance where his understanding of them is apparent, except when a different purpose in their use is disclosed").[9]

Mrs. Castruccio argues that if Item 10 means what the circuit court said it means, her husband would have been intestate had she predeceased him. She invokes the presumption against intestacy (*see*, *e.g.*, *McElroy v. Mercantile-Safe Deposit & Trust* Co., 229 Md. 276, 283 (1962)) in support of her interpretation. The circuit court was unimpressed with her contention, as are we. The fact is that, under Mrs. Castruccio's interpretation of her husband's sloppily drafted will,[10] he would arguably have been

---

[9] Even the State's appellate courts have sometimes used the verb "to file" when discussing the act of depositing a will for safekeeping with the register of wills. *See*, *e.g.*, *Castruccio v. Estate of Castruccio*, 456 Md. at 9 ("Peter signed a last will and testament on September 28, 2008, which he filed with the Register of Wills for Anne Arundel County for safekeeping"); *In re Estate of Vess*, 234 Md. App. 173, 181 (2017) ("the Register docketed the two prior wills and two prior codicils, each of which had been filed with the Register for safekeeping"); *see also Green v. Nelson*, 227 Md. App. 698, 710 (2016) ("[a]ccording to Green, because he filed the 2009 Will for the register's safekeeping, the existence of the 2009 Will should have automatically triggered a judicial probate when the 2003 Will was offered"). These cases demonstrate that the term "filed" differs considerably from the legal terms of art that must be read in accordance with their technical, legal meaning. *See*, *e.g.*, *Emmert v. Hearn*, 309 Md. at 23-24 ("personal property"); *Patchell v. Groom*, 185 Md. at 15-16 ("per stirpes"); *Mazziotte v. Safe Deposit & Trust Co.*, 180 Md. 48, 50-51 (1942) ("per capita"); *Cowman v. Classen*, 156 Md. 428, 446 (1929) ("children"); *Lobe v. Goldheim*, 153 Md. 248, 251 (1927) ("heirs"); *Stahl v. Emery*, 147 Md. 123, 132 (1925) ("share and share alike"); *Shipley v. Mercantile Trust & Deposit Co.*, 102 Md. 649, 660 (1906) ("dower and thirds"); *Hill v. Safe Deposit & Trust. Co. of Balt.*, 101 Md. 60, 63 (1905) ("survive" and "survivor"); *State to Use of Dittman v. Robinson*, 57 Md. 486, 500-01 (1882) ("bills receivable"); *Estep v. Mackey*, 52 Md. 592, 600 (1879) ("without issue" and "without heirs"); *Clarke v. Smith*, 49 Md. 106, 120 (1878) ("heirs" and "heirs lawfully begotten").

[10] For a summary of the many errors in the 2010 will, see *Castruccio v. Estate of Castruccio*, 230 Md. App. at 144 & n.14. The 2008 will contained some of the same errors (*see id*. at 144 & n.14), as well as another (the misspelling of "predecease") that was deleted from Item 10 of the 2008 will.

intestate if she survived him, but failed to satisfy the condition of Item 8 that required her to make and execute a will. In the circumstances of this case, the presumption against intestacy counts for little.

In summary, it is natural to read Item 10 as a third condition, in addition to the two conditions previously enumerated a few lines above in Item 8, to Mrs. Castruccio's right to recover under the will. *See Holmes v. Mitchell*, 4 Md. 532, 535-36 (1853) ("[t]he words are the means to ascertain [the intention of the testator], and, however scattered, if they explain it, they are to be collected and put together, that the will may have the effect intended"). It is not at all natural to read Item 10 as the wholesale incorporation of Mrs. Castruccio's estate plan if she died before her husband. For that reason and the other reasons discussed above, we agree with the circuit court's conclusion that, under the literal language of the will, Mrs. Castruccio had to meet three conditions to recover under the will: she had to survive her husband, she had to make and execute a will, and she had to file her will with the Register of Wills of Anne Arundel County. Because she indisputably failed to meet the third condition, the court correctly entered summary judgment against her and in favor of Ms. Barclay and the Estate.[11]

---

[11] This ruling does not leave Mrs. Castruccio with no assets. In the several years before her husband's death, they divided a multi-million dollar investment account between themselves. In addition, Dr. Castruccio conveyed his interest in millions of dollars of jointly-owned real estate to her during that time. Finally, Mrs. Castruccio has taken steps to preserve her right to an elective share of her late husband's estate under Title 3, Subtitle 2, of the Estates and Trusts Article, though Ms. Barclay disputes the adequacy of those steps. Under § 3-203(b) of the Estates and Trusts Article, she would be entitled to half of his net estate, because they have no surviving children.

## IV.    Probable Cause for Caveat

As an additional basis to affirm the judgment below, the Estate argues that under

Item 6, the *in terrorem* or no-contest clause, Mrs. Castruccio could receive no benefits

under the will, because she had unsuccessfully challenged it in the caveat case.  The

circuit court rejected that argument.  So do we.[12]

The circuit court recognized that "Item 6 cannot be read in isolation."  Under § 4-

413 of the Estates and Trusts Article, "[i]f probable cause exists for instituting

proceedings, a provision in a will purporting to penalize an interested person for

contesting the will or instituting other proceedings relating to the estate is void."

Section 4-413 does not define "probable cause," but the circuit court observed that

in other civil contexts Maryland courts have defined it to mean "'a reasonable ground for

belief in the existence of such state of facts as would warrant institution of the suit or

proceeding complained of.'"  *One Thousand Fleet Ltd. P'ship v. Guerriero*, 346 Md. 29,

37 (1997) (quoting *North Point Constr. Co. v. Sanger*, 346 Md. 200, 208-09 (1945));

*Havilah Real Prop. Servs., LLC v. Early*, 216 Md. App. 613, 624 (2014).  Applying that

---

[12] The Estate was not required to file a cross-appeal in order to contest this aspect of the circuit court's decision.  In fact, because the judgment below was wholly in the Estate's favor, the Estate would not have been permitted to take a cross-appeal.  *Paolino v. McCormick & Co.*, 314 Md. 575, 579 (1989); *Offutt v. Montgomery Cnty. Bd. of Educ.*, 285 Md. 557, 564 n.4 (1979).  Nonetheless, "[w]here a party has an issue resolved adversely in the trial court, but like the [Estate] here receives a wholly favorable judgment on another ground, that party may, as an appellee and without taking a cross-appeal, argue as a ground for affirmance the matter that was resolved against it at trial." *Offutt v. Montgomery Cnty. Bd. of Educ.*, 285 Md. at 564 n.4; *accord Paolino v. McCormick & Co.*, 314 Md. at 579.  "This is merely an aspect of the principle that an appellate court may affirm a trial court's decision on any ground adequately shown by the record." *Offutt v. Montgomery Cnty. Bd. of Educ.*, 285 Md. at 579 n.4.

standard, the circuit court concluded that Mrs. Castruccio had probable cause to institute the caveat proceeding. The court reasoned that under *Shane v. Wooley*, 138 Md. 75 (1921), Mrs. Castruccio had a colorable argument that the will was invalid, because the witnesses did not sign on the same page as Dr. Castruccio or on a page that was physically connected to it. Mrs. Castruccio's argument was not foreclosed until the Court of Appeals held that *Shane v. Wooley* applies only when the witnesses sign a document that is not a part of the will itself and that it does not apply when the witnesses and the testator sign different pages of a multi-page will, as happened in this case. *See Castruccio v. Estate of Castruccio*, 456 Md. at 29.

The Estate contends the circuit court employed too forgiving a definition of probable cause. It advocates for the definition of "probable cause" in comment c to § 8.5 of the Restatement (Third) of Property (Wills and Other Donative Transfers) (2001): "Probable cause exists when, at the time of instituting the proceeding, there was evidence that would lead a reasonable person, properly informed and advised, to conclude that there was a substantial likelihood that the challenge would be successful."

In our view, Mrs. Castruccio had probable cause for instituting the proceeding under either standard. When she instituted the proceeding, she was armed with a decision from the State's highest court that, on its face, raised serious questions about whether the will satisfied the technical requirements for attestation. A treatise, of which Ms. Barclay's lawyer was one of the co-authors, contained language that appeared to support Mrs. Castruccio's central contention: "It is generally considered that a witness must sign on the same sheet of paper as the testator or on some sheet physically connected with it."

36

Cristin C. Lambros *et al.*, *Will Drafting in Maryland* § 3.2.1.5 (MICPEL 2007). In addition, on at least two occasions, Maryland's appellate courts had reiterated, if they had not reaffirmed, the ruling on which Mrs. Castruccio relied. *See Castruccio v. Estate of Castruccio*, 230 Md. App. at 139-41 (citing *Casson v. Swogell*, 304 Md. 641 (1985); *Goroum v. Rynarzewski*, 89 Md. App. 676 (1991)).

When Mrs. Castruccio instituted the caveat proceeding, it is difficult to say that she was required to foresee how her adversaries would ultimately succeed in persuading the courts to distinguish those cases. Moreover, she relied "upon the advice of independent legal counsel sought in good faith after" what appears to have been "a full disclosure of the facts," which is "[a] factor that bears on the existence of probable cause[.]" Restatement (Third) of Property (Wills and Other Donative Transfers), *supra*, § 8.5 cmt. c. She had "probable cause" under any reasonable definition of that term.

**CONCLUSION**

The circuit court correctly concluded that Ms. Barclay is entitled to receive Dr. Castruccio's residuary estate and that Mrs. Castruccio is not. We affirm the circuit court's decision in its entirety.

> **JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**